**Robert P. KING and Carol R. King, Appellants,**

v.

**GRAHAM HOLDING COMPANY, INC., et al., Appellees.**

**No. A14-87-1006-CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 1, 1988.

David W. Showalter, Pamela P. Stines, Bellaire, for appellants.

Edna H. Palermo, Craig Smyser, Thomas M. Fountain, Houston, for appellees.

Before J. CURTISS BROWN, C.J., and MURPHY and ROBERTSON, JJ.

## OPINION

ROBERTSON, Justice.

Appellants brought various causes of action against Graham Holding Company, Inc., Remco Enterprises, Liberty Sales Company, Liberty Military Sales Company, Jim Graham, David Kinter and Norman Emerson. The trial court rendered a partial summary judgment disposing of plaintiffs' causes of action for negligence and gross negligence, tortious interference with contract, intentional infliction of emotional distress, breach of fiduciary duty and duty of good faith, and conspiracy as to all defendants. The summary judgment also disposed of all of plaintiff Carol King's causes of action against all defendants except for her claim for loss of consortium. Finally, the judgment disposed of plaintiffs' claims against Kinter and Emerson for breach of contract. Trial on the remaining causes of action against the remaining defendants was to a jury. At the conclusion of the plaintiffs' case the trial court granted a directed verdict in favor of Graham Holding Company, Remco Enterprises, Inc., Liberty Military Sales, Inc., and Graham, Kinter and Emerson on plaintiffs fraud claim, alter ego claim and Mrs. King's claim for loss of consortium. Additionally, a directed verdict was granted in favor of Graham Holding Company on the contract claim. The only remaining issue was the contract claim against Remco Enterprises, Inc. and Liberty Military Sales. The jury found no contract, no damages, and no attorney's fees. Appellants bring eighteen points of error challenging (1) the grant of summary judgment, (2) the directed verdict, (3) evidentiary rulings, (4) special issue submission, (5) limitation of voir dire examination, (6) denial of a challenge of cause of a juror and (7) discovery rulings. We affirm.

### I. FACTUAL BACKGROUND

This dispute centers around the repossession by GMAC of a 1983 Cadillac Cimarron automobile and appellants' claimed resulting damages. Appellant was employed by Graham Holding Company or some of its subsidiary companies for approximately four years. At the time of the events giving rise to his claimed injury, he was employed by Liberty Military Sales. His duties required considerable travel, much of which was accomplished by his use of his personal automobile, a 1983 Cadillac Cimarron. His testimony was that the travel expenses were great and that in an effort to trim them, he was to be provided a new company automobile and the company would purchase his Cadillac which was financed through GMAC. The claimed agreement was not reduced to writing nor was ownership of the automobile transferred to Liberty. However, appellant did receive a new Peugeot automobile in 1984 and he turned the Cadillac over to Liberty where it was used to some degree by the company employees. Additionally, the company maintained insurance on the Cad-

illac and did make some of the monthly payments to GMAC; however, when payments were not made and late payment notices were sent, they were sent to appellant. Appellant was transferred from Liberty to Remco Enterprises, another subsidiary of Graham Holding later in 1984 and, eventually in February, 1985, his employment was terminated in force reduction. He returned the Peugeot but did nothing about the Cadillac; GMAC subsequently repossessed and sold it, and notified appellant of the deficiency. Appellant's refusal to pay the deficiency affected his credit and he therefore sought some six million dollars in damages.

## II. BRIEFING RULES

As a preliminary matter, appellees challenge our consideration of any of appellant's points of error except points eight and fourteen because the points have not been properly briefed. We agree that appellants' brief is deficient and that such deficiency is extremely serious in this case where the transcript consists of some 870 pages of filed papers and approximately 750 pages of depositions; the statement of facts consists of some 674 pages, with three volumes of exhibits, the pages of which are not numbered. Because there is some confusion in the legal community over the effect of briefing inadequacies, we will discuss the area before addressing appellant's points of error. Our starting point is supreme court precedent.

At least as early as 1853 the supreme court held that it would not consider matters which the appellant had failed to present properly. *Mosely v. Gainer,* 10 Tex. 578 (1853). Hardly a novel proposition, this principle of appellate review was repeatedly stated by the high court through the years. *E.g., Burgess v. Sylvester,* 143 Tex. 25, 182 S.W.2d 358 (1944); *Ackerman v. Huff,* 71 Tex. 317, 9 S.W. 236 (1888). Occasionally the court exercised its discretion to order a point rebriefed, *e.g. McManus v. Wallis,* 52 Tex. 534, 541 (1880), but in so doing it pointed out that such a failure was nevertheless reason for dismissing the appeal. *Id.*

One might wonder whether the 1941 adoption of rules of civil procedure changed matters. However, appellate courts had long operated under their own rules of procedure. *See, e.g.* RULES FOR THE COURTS OF TEXAS, 104 Tex. 643 (1912). There is no reason to believe the supreme court's historical requirement of minimal briefing suffered any abrogation by the collection of the 1941 rules. Those 1941 rules contained directives to the supreme court and courts of civil appeals not to dismiss an appeal on purely formal grounds. TEX.R.CIV.P. 504, 437. But that principle never created a right to disregard the other rules. As Justice Spears wrote for a unanimous court in 1983, "Points of error must be supported by argument and authorities, and if not so supported, the points are waived." *Trenholm v. Ratcliff,* 646 S.W.2d 927, 934 (Tex.1983).

When the rules governing appellate practices were segregated into a separate corpus, former rules of civil procedure 504 and 437 carried over as TEX.R.APP.P. 185 and 83. During the transition this court faced a summary judgment case involving poor briefing. In *Inpetco, Inc. v. Texas Am. Bank/Houston,* 722 S.W.2d 721 (Tex.App.—Houston [14th Dist.] 1986), *writ ref'd n.r.e. per curiam,* 729 S.W.2d 300 (Tex. 1987), we encountered an appellant's briefing with a single point of error, namely that the trial court erred in granting summary judgment because material fact issues existed. We found waiver of the complaint because of deficient briefing, scant references to the record, and inadequate supporting argument. *Id.* at 722. The supreme court refused the writ on the merits but disapproved our treatment of the procedural question. 729 S.W.2d at 300. The court said we should have ordered a rebriefing in that cause.

Our opinion failed to recognize that the appellant had in fact complied with the supreme court's express specification for stating a point of error in a summary judgment case. *See Malooly Bros., Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex.1970). Nothing in the per curiam opinion in *Inpetco* purported to question Justice Spears'

statement for the *Trenholm* court that unsupported points of error are waived; indeed *Inpetco* relied on Tex.R.App.P. 83, which was in full force during *Trenholm* (as Tex.R.Civ.P. 437 and in its supreme court analog, Tex.R.Civ.P. 504). *See also* Tex.R.App.P. 74(f) (requiring supporting argument).

Any lingering doubt about *Inpetco*'s scope was surely put to rest by Justice Kilgarlin's opinion for the court in *Davis v. City of San Antonio*, 752 S.W.2d 518 (Tex. 1988). There he rejected the argument that a litigant was *"entitled* to correct its procedural deficiencies." *Id.* at 521 (emphasis added). Neither the rules nor *Inpetco* creates a substantive right to amend briefs. To the contrary, disposition of an appeal may be "based, at least in part, on defects or irregularities in ... appellate procedures." *Id.* at 522. It would be intolerable for an appellate court to be forced to spend an inordinate amount of time preparing for submission of a case, to hear oral arguments without the benefit of proper study, and then to be required to send the cause back to the beginning of the process for rebriefing—and perhaps reargument. Although the wheels of justice turn slowly, they need not roll over the same ground twice.

■ At bottom, the rules recognize a degree of discretion in reviewing courts. We construe points of error liberally, *see Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986), and we will entertain a motion to amend a brief, *see* 8 Tex.B.J. 49–50 (1945), but an appellate court must have the discretion to deny such a motion. *See Davis v. City of San Antonio, supra.*

### III. THE MERITS

In their first two points of error appellants contend the trial court erred in granting summary judgment against them on their negligence and gross negligence claims against all appellees. Appellants argue their negligence action does not arise out of the breach of contract to purchase their automobile. We disagree. In *International Printing Pressmen and Ass't Union v. Smith*, 145 Tex. 399, 198 S.W.2d 729 (1946) the supreme court recognized that while there was no "universally accurate or acceptable definition" of when a cause of action sounds in contract or tort, the court stated:

> However, generally speaking, "actions in contract and in tort are to be distinguished in that an action in contract is for the breach of a duty arising out of a contract either express or implied, while an action in tort is for a breach of duty imposed by law." It is sometimes said that "if the action is not maintainable without pleading and proving the contract, where the gist of the action is the breach of the contract, either by malfeasance of nonfeasance, it is, in substance, an action on the contract, whatever may be the form of the pleading."

198 S.W.2d at 735 (citations omitted). The rule is explained in a leading text:

> Tort obligations are in general obligations that are imposed by law on policy considerations to avoid some kind of loss to others. They are obligations imposed apart from and independent of promises made and therefore apart from any manifested intention of parties to a contract or other bargaining transaction. Therefore, if the alleged obligation to do or not to do something that was breached could not have existed but for a manifested intent, then contract law should be the *only* theory upon which liability would be imposed.

PROSSER & KEETON, THE LAW OF TORTS 656 (5th ed. 1984). (Emphasis in original).

■ Applying these principles to the facts before us, it seems clear to us that the basis of appellants complaint was a breach of an agreement to pay for the Cadillac automobile and appellees owed no duty, other than that existing by virtue of the agreement, to pay for the automobile. This being true, the failure to pay did not create a cause of action sounding in tort.

Next appellants argue they were entitled to pursue this negligence theory because "one who voluntarily undertakes an affirmative course of action for the benefit of another has a duty to exercise reasonable care that the other's person or property

will not be injured thereby" as provided in RESTATEMENT (SECOND) OF TORTS § 323 (1965). Such rule does not apply here because (1) appellants' petition alleges that it was "the intent and understanding of all parties" that the automobile belonged to the appellees, and (2) section 323, by its own terms, applies only to physical harm which was not alleged by appellants. It follows that their gross negligence claim likewise fails because gross negligence in the breach of a contract will not support exemplary damages. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617 (Tex.1986). Appellant's first two points of error are overruled.

In their third point of error appellants contend the trial court erred in granting summary judgment against them on their claim of tortious interference with contractual relations. Appellants have not made a single cite to the record to support their fact statements nor have they cited any authority in support of their position. We overruled this point of error.

In their fourth point of error appellants contend the trial court erred in granting summary judgment against them on their claims for intentional infliction of emotional distress. In their argument under the point, they merely state that "all that can be concluded from a review of the pleadings, motion, response, affidavits, interrogatories and depositions is that a genuine fact issue existed concerning whether this tort had been committed." There are neither page cites to the record nor identification of testimony or other evidence in support of the assertion. The point of error is overruled.

In their fifth point of error appellants contend the trial court erred in granting summary judgment against them on their claim for breach of fiduciary duty and duty of good faith. In attempting to set forth evidence which would create a fact issue precluding summary judgment, appellants merely state "As demonstrated in Appellants summary judgment evidence, King trusted Graham, Kinter, Emerson and the corporate defendants." Neither do appellants cite any authority. This point is overruled.

In point of error six appellants contend the court erred in granting summary judgment against their "cause of action" for conspiracy. Appellants merely state they "were entitled to a jury issue on the civil conspiracy of Appellees, which would impose joint and several liability on each of them." Appellants do not refer to *any* evidence, much less reference it in the record, in support of their position. Again, we overrule the point.

In their seventh point of error appellants contend the trial court erred in granting summary judgment against Carol King on all her claims except her claim for loss of consortium. The "facts" stated under the point by which appellants' attempt to show a fact issue was raised are "Appellants' pleadings (Tr. 319, 321) credit bureau records (Tr. 188), answers to interrogatories and Mrs. King's affidavit (Tr. 640), demonstrate that she too suffered a damaged credit reputation and mental anguish which were proximately caused by 'Appellees' conduct (Tr. 632)' ". Pages 319 and 321 of the transcript are pages of Plaintiff's Third Amended Original Petition; the referenced page 188 in the transcript is the affidavit proving up the 7 pages of credit bureau records which follow. (The entries on these records are not explained and their meaning is not self-explanatory). Mrs. King's affidavit, referenced at page 640 of the transcript, omitting its formal parts, merely states:

> The Defendants conduct damaged my credit, and in addition to such damage I have suffered physical and loss as a proximate result of such conduct. Because of the damages suffered by my husband I have been denied the care, protection, consideration, companionship, services and society of my husband.
>
> My husband and I relied on the promises made to him by the individual and corporate Defendants because we trusted and believed them, and as a result we suffered damage and detriment, when they didn't do what they promised to do. The repossession which resulted from the De-

fendants' misrepresentations caused me to suffer embarrassment, humiliation, anxiety and depression, as well as economic and financial damages.

Further, Affiant sayeth not.

Appellants cite no authority nor any reasoning based upon legal theory why the trial court erred. For the same reasons as above stated, we overrule the point of error.

■ In their fourteenth point of error appellants contend the trial court erred "in proceeding with the hearing on appellee's joint motion for summary judgment over appellant's objections that the motion was received seventeen days before the hearing. on the motion and the notice of hearing was not received until fifteen days before the hearing." Appellees filed their joint motion for summary judgment on September 4, 1987. The certificate of service states it was served upon appellants' counsel, by hand delivery, on the same date which was twenty-one days prior to the date the motion was heard. The notice of the hearing date for the summary judgment motion shows that it was served upon appellants' counsel, by hand delivery, on September 10, 1987. Appellants filed their response to the motion for summary judgment on September 18, 1987. While they stated in the response that the motion "cannot be granted because the motion was not received until September 8, 1987," such statement is not sworn to nor did appellants allege that they were unable to provide a response prior to the hearing. Instead appellants filed their 144 page response and appeared at the hearing and did not file an affidavit as required by TEX.R. CIV.P. 166a(f). Appellants are in no position to complain at this late date. *Hudenburg v. Neff*, 643 S.W.2d 517 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.), *cert. denied*, 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 313 (1983). Appellants' fourteenth point of error is overruled.

■ In their eighth point of error appellants' contend the court erred in granting the appellees motion for directed verdict on appellants' claims for fraud/misrepresentation. The elements of actionable fraud are: (1) that a material representation was made; (2) that it was false; (3) that when the speaker made it he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that he thereby suffered injury.

■ Again, appellants do not support their point with citation to any authority. Their only argument is that:

> Appellants' testimony is replete with references to the misrepresentations of Appellees, and the reliance placed by Appellants, and the detriment suffered by Appellants as a result of relying on Appellees' lies that Appellees would take care of the problems with the GMAC loan, would get the loan paid off in full, and finally that Appellees would get the repossessed car back from GMAC to avoid additional damage to Appellants' credit reputations.

Appellants make ten citations to the testimony which they contend provides "overwhelming factual support for a jury issue." These references merely reveal that appellant (Robert King) trusted "them"; that he requested "them" to make the payment and he was assured that the payments would be made; and that Borg–Warner (from whom financing was being arranged) would be releasing some funds and that "in all probability they would have enough money once these funds were released to pay off the Cadillac." All of these "promises" were to do something in the future; appellants point to no evidence, and we have found none, that shows that any of the appellees knew the statements were false when made or that any of them did not intend to keep the promises when made. We further point out that appellant King was aware that payments from time to time were not made and that he received the notices of non-payment from GMAC. He further testified that he was aware through his conversations with GMAC that his automobile could be repossessed; yet he did nothing to protect himself. We agree with appellees that these actions ne-

gate the element of reliance. Appellants' eighth point of error is overruled.

In their ninth point of error appellants contend the court erred in directing a verdict in favor of all appellees on appellants alter ego claims. Appellants' argument under this point is simply that "the testimony indicated that confusion as to corporate identity and structure reigned with the intermingling of functions, liabilities and employees, and personal use of corporate assets." Appellants do not cite any authority nor reasoning in support of their contention. The point is overruled.

In point of error ten appellants complain of the action of the trial court in directing a verdict against Mrs. King on her claim for loss of consortium. Again appellants offer no authority or argument in support of their contention. The point is likewise overruled.

In their eleventh point of error contending the court erred in directing a verdict against Robert King in his contract claim, appellants merely state:

> Mr. King's testimony coupled with the interrogatories, answers read into evidence of the corporate appellees, as well as the Appellants' exhibits showing check payments and financial statements all created a fact issue on the liability of Graham Holding Company, Inc. Granting this directed verdict was improper.

The contention is not supported by argument nor authority; it is overruled.

In their twelfth point of error appellants contend the "court erred in denying all of appellants' objections to the deposition on written questions of Dr. David Tyler and allowing such deposition to be presented to the jury." At the time appellees offered the deposition on written questions of Dr. Tyler, the following occurred:

> [APPELLANTS' COUNSEL]: Your Honor, we want to put our objections on the record to this deposition testimony.
>
> THE COURT: You may.
>
> [APPELLANTS' COUNSEL]: I'll go ahead and do it at this time.
>
> Well, first to the deposition and then to the individual questions as they are posed or read.

> The plaintiffs object to the introduction of the deposition testimony of Dr. Tyler because notice of the deposition was given less than 10 days before the deposition occurred.
>
> Plaintiffs filed cross-questions and objections to the deposition within the 10-day period required under the rules, and the deposition was conducted without the benefit of those cross-questions being asked or answered, though they were filed within 10 days of the day of the notice of the taking of the deposition, and we would object to the entering of the deposition because timely notice was not given as required under the Rules of Civil Procedure.
>
> THE COURT: Objection will be overruled.

Appellants did not present any factual basis for this objection made in the trial court, nor do they now present any factual basis with record references in support of their contention. Further appellants do not support their conclusory statements with any reasoning or authority; the point is therefore overruled.

In their thirteenth point of error appellants contend the court erred in refusing to submit special issues on detrimental reliance and damages caused thereby. Their argument under the point is merely that the evidence raised the issue, the pleadings supported the issue and the court erred in refusing the issue. No authorities nor argument is given; the point is overruled.

In their fifteenth point appellants contend the trial court erred in prematurely terminating and limiting their voir dire examination. There is no reference to the record where the court terminated, if he did, voir dire examination. Additionally, no argument nor authorities support the contention. It, likewise, is overruled.

In his sixteenth point of error appellants contend the trial court erred in overruling their challenge for cause to a particular juror. They argue they were forced to exercise a peremptory challenge on that juror resulting in "certain objectionable jurors remaining on the list." In order for

appellants to preserve this contention for review, it was incumbent upon them to bring the matter to the attention of the trial court prior to making their peremptory challenges so that the trial court could determine if they were, in fact, forced to take an objectionable juror. *Hallett v. Houston Northwest Medical Center,* 689 S.W.2d 888 (Tex.1985). Having failed to do so, nothing is presented for review. This point of error is overruled.

In their seventeenth point of error appellants contend the court erred in excluding the credit records of each of them from the Credit Bureau of Greater Houston. Appellant does not cite to the record where they were offered and excluded by the trial court. In fact, appellants state in their brief that they made a "specific bill of review [sic] on this precise tender, however, in reviewing the statement of facts this tender of evidence into the record for appeal purposes has been omitted." Nothing is presented for review; the point is overruled. TEX.R.APP.P. 50(d).

In their eighteenth point of error appellants allege that the trial court "manifestly abused its discretion in several discovery related rulings both pretrial and during trial," and they list six specific instances. Appellants do not cite any authority nor do they provide any arguments upon which a finding of an abuse of discretion could be based. This point is overruled.

The judgment is affirmed.