**HENRY S. MILLER MANAGEMENT CORP., Appellant,**

v.

**HOUSTON STATE ASSOCIATES, Appellee.**

No. 01–89–00533–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 12, 1990.

Rehearing Denied May 24, 1990.

Wesley S. Coddou, Houston, for appellant.

John H. Boswell, Houston, for appellee.

Before EVANS, C.J., and HUGHES and COHEN, JJ.

## OPINION

COHEN, Justice.

Based on the jury's verdict, the trial court rendered judgment in favor of Houston State Associates ("HSA") and against Henry S. Miller Management Corporation ("Miller") for breach of contract, violations of the Deceptive Trade Practices Act, and negligence concerning Miller's management of HSA's real estate known as the Gibraltar Complex.

In 1981, HSA hired Miller to manage the Gibraltar Complex until September 1983. During that period, US Life, a major tenant, had serious problems with the air conditioning, heating, plumbing, parking, and appearance of its premises.

In June 1983, US Life told HSA of its intent to cancel the lease because of these problems. US Life claimed these conditions constituted a breach of the lease by HSA. US Life moved out in September.

Treating US Life's letter as an anticipatory breach of the lease, HSA sued US Life. US Life then sued HSA and Miller, asserting constructive eviction, breach of warranties, and violations of the Deceptive Trade Practices Act ("DTPA"). HSA cross-claimed against Miller for indemnity and contribution and for damages for breach of the management contract, breach of the duty of good faith and fair dealing,

DTPA violations, negligence, and breach of fiduciary duties.

The case was tried in three stages. The first was a non-jury trial to decide who was a consumer, under the DTPA. The trial court ruled that US Life and HSA were consumers.

Next, the liability issues were tried before a jury. The jury found that:

1. HSA breached its implied warranty of suitability to its tenant, US Life;

2. HSA breached its lease with US Life with respect to providing maintenance, services, and repairs of the elevators, plumbing, ventilation, heating, and air conditioning systems;

3. HSA did not constructively evict US Life or commit a deceptive trade practice;

4. Miller engaged in deceptive trade practices and in unconscionable action against HSA by misrepresenting its services, but did not do so knowingly;

5. Miller was negligent in carrying out the management agreement with HSA, but was not grossly negligent;

6. Miller breached its contract with HSA;

7. US Life did not lose the benefit of its bargain with HSA;

8. HSA suffered the following damages from Miller's conduct:

(a) loss of $204,000 base rent from US Life on one leased premises;

(b) loss of $310,043.00 base rent from US Life on a second leased premises, loss of operating charges of $130,606.00, loss of parking charges of $55,800.00, and loss of tax charges of $12,305.00; and

10. No punitive damages should be awarded to HSA against Miller.

The issue of attorney's fees was tried by the court, which awarded HSA $125,000.00, and expenses of $25,000.00, plus conditional attorney's fees on appeal.

The final judgment ordered that:

(1) US Life's leases were canceled, but US Life take nothing in damages from HSA and Miller;

(2) HSA take nothing in damages against US Life;

(3) HSA recover actual damages against Miller of $713,114.00, attorneys' fees of $125,000.00, litigation expenses of $25,000.00, prejudgment interest of $498,353.48, postjudgment interest, and court costs; and

(4) Miller take nothing in damages against US Life and HSA.

From this judgment, Miller appeals.

 In points of error one, two, and three, Miller contends the trial court erred in awarding damages because HSA did not seek damages, but pled only for indemnity and contribution from Miller if HSA became liable to US Life. Miller contends that because US Life did not recover damages against HSA, no claim for indemnity will lie, and no pleadings support a money judgment for HSA on any other grounds. We disagree.

HSA did not plead only for indemnity. Other parts of its petition are labeled with headings, including "deceptive trade practices act violation," "breaches of contract and duty and covenant of good faith and fair dealings," and "negligence." It is true, as Miller contends, that each of these claims contains language that appears to make the claim conditional. The deceptive trade practice pleading, for example, states:

If [US Life is] successful at trial on any . . . allegations, then Miller's acts and practices . . . violate the [DTPA]. . . .

The negligence pleading states:

If [US Life is] successful at trial on any . . . allegations, then Miller has been negligent in performing its obligations under the agreement.

The breach of contract pleading states:

If [US Life is] successful at trial on any . . . allegations, . . . then Miller breached and wholly failed to perform these forth set promises and warranties to HSA. . . .

Each of these claims is separately labeled and numbered. Each appears in the pleading as an additional claim against Miller, separate and apart from the first labeled and numbered claim for indemnity. There can be no confusion, however, because of HSA's prayer for relief. That prayer, in addition to seeking indemnity

and contribution, repeatedly seeks all past and future lost rentals and lease charges, actual and exemplary damages for negligence, multiple damages under the DTPA, attorney's fees, and a refund of all past commissions paid to Miller. The prayer claims damages in excess of $2,000,000, plus prejudgment interest. Such a prayer gives notice of a claim for affirmative relief, not just a claim for indemnity and contribution. TEX.R.CIV.P. 47.

We hold that the pleadings were sufficient to support the judgment, and we overrule points of error one, two, and three.

■ In point of error four, Miller contends the trial court erred in cancelling the leases because 1) US Life elected a legal remedy, i.e., damages, and submitted it to the jury, and 2) cancellation is an equitable remedy that conflicts with jury findings that US Life did not lose the benefit of its bargain, that US Life was not constructively evicted, and that US Life had quiet enjoyment of its premises.

In *Davidow v. Inwood North Pro. Group*, 747 S.W.2d 373, 377 (Tex.1988), the court held that the tenant, Dr. Davidow, could abandon the premises without liability for rent solely because the landlord breached the implied warranty of suitability. Miller contends the landlord in *Davidow* was also guilty of constructive eviction, unlike HSA. Miller says this distinction makes the present case inappropriate for the equitable remedy of cancellation. We disagree.

The *Davidow* court did not base its holding on the fact there was a constructive eviction. It held that the breach of the warranty of suitability, alone, justified cancellation. We hold that US Life was not required to prove constructive eviction, loss of quiet enjoyment, or loss of benefit of the bargain, in addition to breach of the warranty of suitability, in order to have the lease cancelled.

Point of error four is overruled.

■ In point of error five, Miller contends the trial court erred in ruling that HSA take nothing against US Life because the jury found US Life owed HSA $250

rent. We hold that Miller has no right to complain of a violation of HSA's rights. *Buckholts Independent School Dist. v. Glaser*, 632 S.W.2d 146, 150 (Tex.1982).

Point of error five is overruled.

■ In point of error six, Miller contends the trial court erred by submitting the wrong measure of damages to the jury. Miller says that HSA is not entitled to recover lost rentals, but only its lost net profit on the US Life leases.

Question 17 instructed the jury to find the amount of lost "base rent" on one building occupied by US Life and the loss of base rent, operating charges, parking charges, and tax charges on another. Miller cites no authority holding that a landlord cannot recover lost rent as damages from an agent whose deficient management drove a tenant away.

HSA cites *Maida v. Main Building of Houston, Inc.*, 473 S.W.2d 648 (Tex.Civ. App.—Houston [14th Dist.] 1971, writ ref'd, n.r.e.), which held that a landlord can recover lost rent from a defaulting tenant. HSA argues, by analogy, that where a tenant justifiably abandons a lease, as US Life did because of Miller's deeds, the landlord should recover rent lost due to the agent's mismanagement. While we find this argument persuasive, we need not decide the issue on the merits.

Miller has not pointed out that it presented its written objections to the charge to the trial judge and obtained an adverse ruling. Nothing is presented for review. TEX.R.APP.P. 50(d); 52(a); 74(d). We decline to search a 651 page transcript and an 1823 page statement of facts for error.

Point of error six is overruled.

In point of error seven, Miller contends the trial court erred in awarding HSA damages that it could not have recovered from US Life under the terms of the lease. This contention is without merit. The lease provision that Miller cites deals with US Life's duty to make repairs. HSA did not win a judgment for repairs, and the cost of repairs was not included in the jury question on damages. Even if Miller, which was not a party to the lease, can assert US Life's

contractual defenses, the provision cited is irrelevant to the judgment before us.

Point of error seven is overruled.

In point of error eight, Miller asserts that the court erred in calculating prejudgment interest "from the date only that US Life made its last lease payment because appellee could not have incurred its damages as alleged until such time as each of US Life obligations under the leases became due and owing." Miller cites no legal authority under this point of error. Its only record citations are to two pages of the charge and to one page of its motion for new trial. Only the latter mentions prejudgment interest. None of these pages shows what legal standard or arithmetical calculation the trial court used in determining prejudgment interest. Nor does Miller present us a calculation that correctly determines prejudgment interest. We decline to search this voluminous record for evidence of error. Nothing is presented for review. TEX.R.APP.P. 50(d); 74(d).

Point of error eight is overruled.

In point of error nine, Miller asserts the trial court erred by awarding attorney's fees that HSA incurred before May 1, 1988 because HSA did not make a demand on Miller until March 31, 1988. Miller cites no authority supporting its contention, and it cites no instance where it requested relief and was denied it in the trial court. Nothing is presented for a review. TEX.R.APP.P. 50(d); 52(a); 74(d).

Point of error nine is overruled.

In point of error ten, Miller contends the trial court erred in denying its motion to disregard the jury's answer to question 17 because there is no evidence, or insufficient evidence, supporting the jury's answer. Miller cites only to its motion for new trial, which contends the trial judge erroneously overruled its motion to disregard. Miller nowhere directs us to any motion to disregard question 17, or to the court's ruling on its motion. Miller does not cite any legal authority, does not cite to the statement of facts, and does not discuss the evidence. Nothing is presented for review. TEX.R.APP.P. 50(d); 52(a); 74(d).

Point of error ten is overruled.

■ In point of error eleven, Miller contends the trial court erred in submitting jury questions on the DTPA claim "because appellee holds, or is controlled by entities that hold, assets in excess of $5,000,000.00 and waived the provisions of the DTPA by virtue of the management agreement with appellant." Miller cites no legal authority. Miller had the burden to disprove that HSA was a consumer under the DTPA. *Challenge Transportation, Inc. v. J. Gem Transportation, Inc.*, 717 S.W.2d 115 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). *See also Eckman v. Centennial Savings*, 784 S.W.2d 672, 674–75 (1990). Since the record of the non-jury trial concerning HSA's consumer status is not before us, nothing is presented for review. TEX.R.APP.P. 50(d).

Point of error eleven is overruled.

■ In points of error twelve through nineteen, Miller contends that the trial court erred in denying its motion to disregard the jury's answers to various questions because there is no evidence or insufficient evidence to support them. Miller's grouped argument on these eight points of error covers less than one and one-half double-spaced pages and contains neither citation to legal authority nor to the statement of facts. Miller again complains about denial of its motion to disregard, but it does not direct us to the motion or to the trial court's ruling. We again decline to search this record for error. Finally, there can be no error in overruling a motion to disregard the jury's answer due to factually insufficient evidence because a jury's answer can be disregarded only when there is no evidence. Nothing is presented for review. TEX.R.APP.P. 50(d); 52(a); 74(d), (f).

Points of error twelve through nineteen are overruled.

In points of error twenty and twenty-one, Miller contends the trial court erred in granting a severance to Lackshin & Nathan, another tenant who was suing HSA, and in denying its motion to sever.

As a general rule, any claim may be severed and proceeded with separately, and the trial court has broad discretion to grant or deny a motion for severance. TEX. R.CIV.P. 41; *Morgan v. Compugraphic Corp.,* 675 S.W.2d 729, 734 (Tex.1984). This case shows the wisdom of that rule. Here, many parties asserted many different claims against each other. Especially when trial is before the jury, it is essential for the trial judge to keep complex litigation manageable. This is a difficult task, and we will set aside the trial judge's exercise of discretion only for clear abuse. Here, the jury considered only Miller's conduct in managing the US Life leases. A review of this record convinces us that the trial judge did not abuse his discretion in attempting to break this case into manageable parts. Moreover, Miller has not shown that the trial court's ruling "was reasonably calculated to cause and probably did cause the rendition of an improper judgment." Tex.R.App.P. 81(b)(1).

Points of error twenty and twenty-one are overruled.

In point of error twenty-three, Miller contends:

> The Trial Court erred in granting affirmative relief on Appellee's cross-claim, because the totality of Appellant's conduct was not considered until the severed portion of the case was tried, and the parties agreed that no finding of fact or determination of the issues in the first half of the trial would be binding upon the parties in the second half of the trial.

We overrule this point for several reasons. The first is that the severance removed unnecessary complexity from this trial. Second, the Lackshin and Nathan suit involved a different tenant, a different lease, different premises, and different time periods. Finally, no legal authority is cited. We note, again, that although we find no error, Miller has not demonstrated that the severance orders likely caused the rendition of an improper judgment.

Point of error twenty-two is overruled.

In point of error twenty-three, Miller contends the trial court erred in denying its motion for new trial because of the cumulative harm of the errors asserted in points one through seven and 20 through 22. We have found no error in these points.

Point of error twenty-three is overruled.

HSA brings a cross-point of error contending the trial court erred in awarding it attorney's fees and expenses of $150,000.00 because the uncontroverted evidence showed reasonable attorney's fees and expenses totalled $582,875.40.

HSA cites no part of the statement of facts or transcript where it proved its entitlement to a larger fee or where it requested a larger judgment and was denied it. We will not search this record for error. TEX.R.APP.P. 50(d); 52(a); 74(d).

HSA's cross-point of error is overruled.

The judgment is affirmed.

## MOTION FOR REHEARING

Appellant complains that we overruled 13 of its 23 points of error for failure to comply with TEX.R.APP.P. 50(d), 52(a), and 74(d), (f). Appellant particularly complains of our overruling point six because it did not state where in the appellate record the trial court overruled its objections to the damages issue. Appellant concedes that it did not point out in point of error six that it obtained an adverse ruling on the damages issue.

Point of error six appeared at pages 24 to 26 of appellant's appellate brief. Appellant now points out, for the first time on rehearing, that it cited the trial court's adverse ruling one time elsewhere in its 47–page brief, specifically, at page 17 within its grouped discussion of points one through three. Those points, which we overruled on the merits, attacked appellee's pleadings. They did not attack, or even mention, the measure of damages. They did not mention or cite to question 17, the damages question. Points one through three were not grouped with point six for argument, and neither argument referred to the other.

Appellant contends that we are "playing a fictitious game" because

not only did the court of appeals have to fall over the trial court's adverse ruling to get to point of error number six, the court of appeals need only have looked to page one of the table of contents of the transcript to find the court's order overruling the written objections to the charge.

We disagree that we "need only have looked to page one of the table of contents of the transcript." We do not represent the appellant; therefore, it is inappropriate that we "look" for error. This appellate record contains five pages of table of contents spread over three volumes of transcript. The transcripts total 651 pages, the statement of facts totals 823 pages, and there are approximately 600 pages of exhibits.

Appellant contends *Inpetco Inc. v. Texas Am. Bank/Houston*, 729 S.W.2d 300 (Tex.1987), prohibits us from holding that a point of error is waived, due to briefing defects, unless we first allow the party to correct them. We take this opportunity to discuss *Inpetco* because of the number of defective briefs we are receiving in complex civil cases, like this one, involving large appellate records.

In *Inpetco*, the trial court granted a summary judgment, and Inpetco brought only one point of error to the court of appeals. *See Inpetco, Inc. v. Texas Am. Bank*, 722 S.W.2d 721 (Tex.App.—Houston [14th Dist.] 1986), *writ ref'd n.r.e.*, 729 S.W.2d 300 (Tex.1987). The court of appeals held that Inpetco's brief did not comply with the requirements of what is now Tex.R.App.P. 74, and therefore, the sole point of error was waived and the judgment was affirmed.

The supreme court disapproved the holding that the point of error was waived by failure to comply with the briefing requirements of Tex.R.App.P. 74. It held that rule 74 should be read together with Tex.R. App.P. 83, which provides:

A *judgment* shall not be *affirmed* or reversed or an appeal dismissed for defects or irregularities in appellate procedure, either of form or substance, without allowing a reasonable time to correct or amend such defects or irregularities....

(Emphasis added.) The supreme court concluded that the court of appeals erred in affirming the judgment because of Inpetco's briefing defects without first allowing it to rebrief. We note that rule 74 speaks of affirming judgments, which requires that all points of error be overruled, as happened in *Inpetco*. It does not speak of overruling some points of error due to procedural defects, while reaching others on the merits and affirming, reversing, or dismissing, as those other points require.

This case differs from *Inpetco*. There, the summary *judgment* was *affirmed* due to briefing defects because *every* point of error (albeit a single one) was deemed waived. Here, we have reviewed 10 points of error on the merits. Thus, we have not affirmed the judgment because of briefing defects, but because appellant has not shown reversible error in any point of error, including the 10 points of error that we reviewed on the merits. Overruling some, but not all, points of error because of procedural defects is not the same as affirming a judgment due to procedural defects. The difference is that the appellant may still get complete or partial relief on other points not waived by procedural defects. For a prominent example, *see Texaco, Inc. v. Pennzoil, Co.*, 729 S.W.2d 768, 810, 815, 866 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.) (holding several points of error waived for not complying with rule 74, while sustaining a properly presented point of error worth $2 billion).

We hold that rule 83 does not require a court to grant time to amend defective points of error, unless, as in *Inpetco*, all the points are defective and overruling them on that basis would constitute an affirmance for defects in appellate procedure. We think this interpretation is consistent with the following authorities: *Davis v. City of San Antonio*, 752 S.W.2d 518, 521–22 (Tex.1988); *Trenholm v. Ratcliff*, 646 S.W.2d 927, 934 (Tex.1983); *King v. Graham Holding Co.*, 762 S.W.2d 296, 298–99 (Tex.App.—Houston [14th Dist.] 1988, no writ); *Arrechea v. Arrechea*, 609

S.W.2d 852, 855 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.) (cited with approval in *Trenholm*). We agree with the court's statement in *King:*

> It would be intolerable for an appellate court to be forced to spend an inordinate amount of time preparing for submission of a case, to hear oral argument without the benefit of proper study, and then be required to send the cause back to the beginning of the process for rebriefing— and perhaps reargument. Although the wheels of justice turn slowly, they need not roll over the same ground twice.
>
> At bottom, the rules recognize a degree of discretion in reviewing courts. We construe points of error liberally ... and we will entertain a motion to amend a brief ... But an appellate court must have the discretion to deny such a motion.

762 S.W.2d at 299.

The motion for rehearing is denied.