In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00043-CV


______________________________




PERRY FEAGINS, Appellant



V.



TYLER LINCOLN-MERCURY, INC., D/B/A JACK O'DIAMONDS, Appellee




 


On Appeal from the 241st Judicial District Court


 Smith County, Texas


Trial Court No. 06-2515-C




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Chief Justice Morriss



O P I N I O N (1)


 When Perry Feagins bought a new Honda Civic from Tyler (2) Lincoln-Mercury, Inc., d/b/a
Jack O'Diamonds (3) (Dealer), he opted to have the purchase financed. To accomplish his purchase
and financing, Feagins signed a preprinted, multipage "Retail Installment Sale Contract" prepared
by Dealer.

 The contract sets out the terms of an installment sale by Dealer to Feagins and bears an
assignment of the contract by Dealer to Household Automotive Finance Corporation, a third-party
lender, to which Feagins was to make payments. Among various terms and disclosures, the contract
discloses that the rate of interest, termed the "annual percentage rate," on the financed balance is
12.89 percent. On the contract, a charge of $31.34 is labeled "Dealer's Inventory Tax Paid to Seller,"
and a charge of $50.00 is labeled "Documentary Fee . . . Paid to Seller."

 Feagins sued Dealer, alleging misrepresentations--both affirmative statements of fact and
fraudulent nondisclosures--related to the "Dealer's Inventory Tax," the rate of interest, Dealer's gain
on the resale of the contract to the third-party lender, and the "Documentary Fee." He sought to
establish causes of action that these various affirmative representations and nondisclosures
constituted fraud, violated the Texas Finance Code, and triggered a right to injunctive relief under
the Texas Deceptive Trade Practices Act (DTPA).

 Dealer filed a motion for summary judgment, combining both traditional and no-evidence
motions for summary judgment. Dealer argued that there was no evidence to support at least one
element of each of the causes of action and that its summary judgment evidence proved conclusively
that no cause of action was viable. The trial court granted Dealer's motion.

 Feagins contends on appeal (4) that Dealer did not provide summary judgment evidence
sufficient to support a traditional motion, that Feagins provided sufficient evidence to defeat a no-evidence motion, and that his DTPA cause of action was not addressed by either motion. Thus,
Feagins argues, the judgment should be reversed. We affirm the summary judgment because we
hold that (1) summary judgment on the causes of action under the Texas Finance Code was proper,
(2) no fact issue exists on the alleged affirmative misrepresentations, and (3) Dealer had no duty
regarding the alleged fraudulent nondisclosure.

(1) Summary Judgment on the Causes of Action Under the Texas Finance Code Was Proper

 First, analyzing the allegations as attempts to state causes of action solely under the Texas
Finance Code leads us to conclude the trial court properly included in Dealer's summary judgment
the alleged causes of action under the Code.

 The "Dealer's Inventory Tax": An entry on the contract makes a charge for "Dealer's
Inventory Tax Paid to Seller" in the amount of $31.34. Feagins alleges that the entry was misleading
because the amount was not a tax and was payable to the State, not by Feagins, but by Dealer.
Whether those aspects of that entry are misrepresentations is addressed below, but, as we explain
below, those allegations do not make out a violation of the Texas Finance Code.

 The Texas Consumer Credit Commissioner issued an advisory letter dated December 22,
1993, and an interpretation dated January 24, 1994. Both documents conclude that the "Dealer's
Inventory Tax" is a tax and that the law authorizes passing it on to a customer along with a
"meaningful caption" such as "Dealer's Inventory Tax"--precisely what Dealer did in Feagins'
transaction.

 Title 4 of the Texas Finance Code--entitled the Texas Credit Title and spanning sections
301.001-371.306--is  not  violated  if  the  challenged  action  "conforms  to  an  interpretation  of"
Title 4 by the Consumer Credit Commissioner under Section 14.108 of the Texas Finance Code, so
long as the interpretation is in effect at the time of the challenged act or omission. Tex. Fin. Code
Ann. § 303.401 (Vernon 2006). Because of that statutory authority of the Consumer Credit
Commissioner and the above-referenced rulings, we hold that the Texas Finance Code was not
violated by the entry charging the "Dealer's Inventory Tax."

 The Rate of Interest: Feagins alleges, not that the rate of interest exceeded some lawful
maximum rate, but that it was misrepresented as being the best rate Feagins could get from the third-party lender. Feagins points to no provision of the Texas Finance Code that would make such a
representation a violation of the Texas Finance Code. We find no violation of the Code in this
respect.

 Dealer's Gain on the Resale of the Contract: Feagins alleges that, from the interest rate
margin between that charged on the contract and the effective rate earned by the third-party lender,
Dealer reaped a profit of $556.20 and fraudulently concealed that profit from Feagins. Again,
Feagins fails to point out any provision of the Texas Finance Code that this practice allegedly
violates. In fact, Section 348.301 of the Texas Finance Code applies to this type of transaction and
provides that neither a dealer nor a third-party lender has the obligation to disclose to the customer
the terms of the assignment of a contract to the third-party lender. We find no violation of the Code
in this respect.

 The "Documentary Fee": Feagins alleges that the $556.20 Dealer made in selling Feagins'
contract to a third-party lender at a premium is a charge to Feagins for "documentation"--citing the
deposition of James Bragg--and is, therefore, an improper addition to the maximum $50.00
elsewhere charged to Feagins for "Documentary Fee . . . Paid to Seller," thus violating the Texas
Finance Code. There are two reasons why we disagree.

 First, the charge to Feagins that resulted in this profit to Dealer was contract interest at 12.89
percent, as to which there is no allegation of any violation of the Texas Finance Code. There was
no charge to Feagins in the amount of $556.20; that sum was collected by Dealer from the third-party
lender as a consequence of the contract resale transaction.

 Second, it seems clear to us that the Texas Finance Code contemplates that the "documentary
fee" is for documentation needed in every transaction, most notably doing the paperwork to get a
certificate of title properly applied for and issued to the buyer. It is chargeable whether or not there
is any loan documentation to be done. We find no rule that a "documentary fee" is chargeable only
when a vehicle is being purchased by way of installment sale financing. That confirms to us that the
"documentary fee" is chargeable even in cash sales. And that, as a matter of law, distinguishes the
"documentary fee" from any financing charges or profits related to financing. Though there is
summary judgment evidence that Dealer's profit on the resale of Feagins' contract was for preparation
of the retail installment sale contract, that charge is not properly characterized as an added
"Documentary Fee." We find no violation of the Code in this respect.

(2) No Fact Issue Exists on the Alleged Affirmative Misrepresentations

 We now consider the two alleged affirmative misrepresentations--that the "Dealer's
Inventory Tax" was a tax Feagins was obligated to pay to the State and that the rate of interest
charged to Feagins was the best rate available and, by implication, was the rate being charged
Feagins by the third-party lender--to determine if Dealer's summary judgment was proper on the
claimed causes of action for affirmative misrepresentations. We hold that, because Feagins'
summary-judgment affidavit was struck by the trial court and that action has not been challenged on
appeal, the summary judgment must be affirmed in this regard.

 A party commits fraud by (1) making a false, material misrepresentation (2) that the party
either knows to be false or asserts recklessly without knowledge of its truth (3) with the intent that
the misrepresentation be acted upon, (4) and the person to whom the misrepresentation is made acts
in reliance upon it (5) and is injured as a result. (5) Formosa Plastics Corp. USA v. Presidio Eng'rs &
Contractors, Inc., 960 S.W.2d 41, 47-48 (Tex. 1998) (op. on reh'g); Reynolds v. Murphy, 188
S.W.3d 252, 270 (Tex. App.--Fort Worth 2006, pet. denied) (op. on reh'g).

 Dealer argues that Feagins' affidavit should be disregarded because the trial  court  (by  order)
struck  portions  of  the  affidavit  based  on  Dealer's  objections.  See  Tex. R. Civ. P. 166a(f) (to
be competent summary judgment evidence, affidavits must be made on personal knowledge, set forth
facts that would be admissible in evidence, and affirmatively show affiant is competent to testify to
matters stated therein); see also United Blood Servs. v. Longoria, 938 S.W.2d 29, 30 (Tex. 1997). 
Dealer also argues that Feagins has not challenged the trial court's ruling on the affidavit and that,
therefore, we should not consider the portions of the affidavit struck by the trial court. We agree.

 We should address only those issues raised and necessary to a final disposition of the appeal. 
See Tex. R. App. P. 47.1. It is inappropriate that we take up unassigned error on any party's behalf,
absent extraordinary circumstances. Under Rule 38.1 of the Texas Rules of Appellate Procedure,
appellants must assign error in a brief to complain of that error. Lagrone v. John Robert Powers
Schools, Inc., 841 S.W.2d 34, 37 (Tex. App.--Dallas 1992, no pet.); see Henry S. Miller Mgmt.
Corp. v. Houston State Assocs., 792 S.W.2d 128, 134 (Tex. App.--Houston [1st Dist.] 1990, writ
denied) (op. on reh'g) ("It is not the proper function of this Court to create arguments for an
appellant. We are restricted to addressing the arguments actually raised, not those that might have
been raised."); In re Guardianship of Moon, 216 S.W.3d 506 (Tex. App.--Texarkana 2007, no pet.); 
Aluminum Chems., Inc. v. Bechtel Corp., 28 S.W.3d 64, 68 (Tex. App.--Texarkana 2000, no pet).

 Three sections of Feagins' affidavit were complained of and struck (or disregarded). 

 First: "I relied on Defendant's representations to me as presented in the contract and buyer's
order that this was a tax I owed."

 Second: "I understand from Mr. Bragg's deposition testimony that I was charged an extra
$556.20 by the dealership for documenting my purchase."

 Third: (the last paragraph of the affidavit) "The dealership told me they would help me
arrange financing and told me that Household Automotive Financial Corporation was my creditor
in this transaction. They negotiated the rate for me and told me that 12.89% was the best rate
available to me from Household Automotive Financial Corporation. If I had known what I now
know, that the rate I was approved at was 11.89% which is less than the rate I was told, I would
never have agreed to sign the installment contract or purchase the vehicle."

 Without those portions of the affidavit, there is no summary-judgment evidence that Dealer
represented to Feagins he owed a "Dealer's Inventory Tax" and that the 12.89 percent interest rate
on the contract was the best rate he could get from the third-party lender.

 Dealer's Inventory Tax: We have discussed what the Texas Finance Code has to say about
the Dealer's Inventory Tax and have ruled that the manner in which Dealer handled it in this
transaction did not violate the Code. The fact that Feagins cannot show a violation of the Code in
this respect would require him to offer at least some summary judgment proof that there was some
misrepresentation concerning this item. (6) Without the summary-judgment affidavit on this point,
there is no fact issue here. (7)

 The Interest Rate: We reach essentially the same result as to the rate of interest. Dealer
argues that it did not misrepresent the interest rate to Feagins, largely because the contract itself
states the interest rate as 12.89 percent. This misses Feagins' point, however. His point is that the
third-party lender charged, effectively, 11.89 percent, a better rate he should have been able to get
directly. Again, however, without his affidavit that he was told he would receive the best rate
available to him from Household Automotive Financial Corporation, there is no fact issue about any
misrepresentation on the interest rate or any reliance on any misrepresentation.

 The available summary-judgment proof set up no fact issue on either of these points.

 Feagins also sought injunctive relief under the DTPA. Feagins points out in his appellate
brief that Dealer's motion for summary judgment does not refer in any respect to his DTPA
allegations; thus, he argues, summary judgment against his claim on that issue was not properly
rendered. That is not precisely correct, as the motion does ask, in a single sentence, that the motion
for injunction be denied. The sole argument raised under that contention was that, if the fraud claims
failed as a matter of law, then no injunctive relief could properly be granted. Since we hold that the
summary judgment was proper as to the affirmative misrepresentation causes of action, it was also
proper in denying injunctive relief under the DTPA as it may apply to those alleged affirmative
misrepresentations.


(3) Dealer Had No Duty Regarding the Alleged Fraudulent Nondisclosure

 Feagins alleges that Dealer fraudulently concealed the fact that it made a profit of $556.20
on the resale of his contract to the third-party lender and that, had he known of the profit, he would
not have entered into the transaction. Part of the summary-judgment evidence is a "commission"
sheet attached to the approval documentation, indicating that a commission was paid to Dealer of
the $556.20--approximately half of the resale premium paid to Dealer resulting in a one percentage
point difference between the contract rate and the effective interest rate being earned by the third-party lender.

 Dealer's sales manager, Bragg, was deposed, and his fairly brief deposition is also part of the
summary judgment proof. He was questioned about the Feagins transaction and forms used in it and
explained that Dealer had an indirect lending agreement with Household Automotive Financial
Corporation. Bragg identified Dealer as the creditor that assisted in arranging the financing. Though
his explanation in his deposition was not carefully phrased, Bragg explained the difference between
the rates is essentially that the "buy rate" was 11.89 percent, which is the effective rate the third-party
lender receives after paying Dealer a premium for the retail installment sales contract, while the
actual rate to Feagins was 12.89 percent. A document, titled "Approved-Structure" and generated
by the third-party lender, stated that it had approved financing for Feagins at a "Buy Rate" of 11.89
percent. Bragg described the $556.20 as Dealer's commission on the interest rate differential.

 Dealer argues that there was no evidence that it had any duty to disclose any facts to Feagins,
no evidence that it was deliberately silent as to such facts, that Feagins relied on Dealer's
nondisclosure, or that Feagins was injured by any nondisclosures. The part of Dealer's argument that
is viable is the argument of no duty. As discussed above, there is summary judgment proof that
Feagins relied on the completeness and accuracy of the representations made to him and that he
signed the contract only because of them, language broad enough to include the concealment of a
"side" profit by Dealer on the resale of the contract. Thus, there is neither a lack of any evidence of
Feagins' reliance or injury, nor conclusive proof that Feagins did not rely or was not injured. A
summary judgment is improper here on the basis of lack of reliance or injury.

 This theory of tort liability is based on the concept that a misrepresentation may also consist
of the concealment or nondisclosure of a material fact when there is a duty to disclose. Custom
Leasing, Inc. v. Tex. Bank & Trust Co., 516 S.W.2d 138, 142 (Tex. 1974); Reynolds, 188 S.W.3d
at 270. The duty to disclose arises when one party knows that the other party is ignorant of the true
facts and does not have an equal opportunity to discover the truth. Reynolds, 188 S.W.3d at 270. 
Whether a duty to disclose exists is a question of law. Bradford v. Vento, 48 S.W.3d 749, 755 (Tex.
2001). However, that question of law is dependent on the application of facts, and in the context of
a no-evidence summary judgment, we are simply looking to see first if there is any evidence of facts
that might support the imposition of such a duty. In the context of a traditional motion, we look to
see if Dealer conclusively proved that it had no such duty.

 Several courts of appeals have held that a general duty to disclose information may arise in
an arm's-length business transaction when a party makes a partial disclosure that, although true,
conveys a false impression. See, e.g., McCarthy v. Wani Venture, A.S., 251 S.W.3d 573, 585 (Tex.
App.--Houston [1st Dist.] 2007, no pet.). (8)

 As astutely pointed out by the Fort Worth court, "fraud is usually not discernible by direct
evidence and is usually so covert or attendant with such attempts at concealment as to be incapable
of proof other than by circumstantial evidence." W.L. Lindemann Operating Co. v. Strange, 256
S.W.3d 766, 776 (Tex. App.--Fort Worth 2008, no pet.); see Spoljaric v. Percival Tours, Inc., 708
S.W.2d 432, 435 (Tex. 1986). Motive, past conduct, and related wrongful acts are thus factors to
be considered. Cotten v. Weatherford Bancshares, Inc., 187 S.W.3d 687, 707 (Tex. App.--Fort
Worth 2006, pet. denied).

 The only real question here is whether Dealer had a duty to speak and nonetheless stayed
silent.

 The Texas Finance Code explicitly provides that neither a dealer nor a third-party lender has
the obligation to disclose to the buyer the terms under which a dealer resells the consumer contract
to the lender. See Tex. Fin. Code Ann. § 348.301 (Vernon 2006). Section 348.301 effectively
insulates Dealer from any liability for failure to affirmatively disclose the terms of the assignment
of contract to the third-party lender. That information, which Dealer was statutorily relieved from
an obligation to disclose to Feagins, included the profit of $556.20. For that reason, summary
judgment was proper on any cause of action springing from Dealer's nondisclosure of that profit.

 We affirm the summary judgment.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: February 4, 2009

Date Decided: February 5, 2009
1. Our earlier opinion in this case, issued November 26, 2008, is withdrawn and this opinion
is substituted in its place as the opinion of this Court.
2. This case was transferred to this Court from the Tyler Court of Appeals as part of the Texas
Supreme Court's docket equalization program. We are not aware of any conflict between the
precedent of the Tyler Court and the precedent of this Court on any issue relevant in this appeal. See
Tex. R. App. P. 41.3.
3. The separate corporation Jack O'Diamonds, Inc., was nonsuited from this case. It appears
that the proper party is the corporation Tyler Lincoln-Mercury, Inc., d/b/a Jack O'Diamonds.
4. Dealer's motion for summary judgment is not a model of clarity. Counsel are cautioned to
always carefully delineate no-evidence and traditional motions for summary judgment, preferably
into two separate motions. The response is equally imprecise, and briefing from Feagins merges
arguments on multiple theories of recovery together into a single continuous discussion which is
often difficult to parse. That difficulty also appears in Feagins' appellate brief. We have attempted
to separate and analyze the various issues.
5. Thus, a statement is not fraudulent unless the maker knew it was false when he or she made
it or made it recklessly without knowledge of the truth. DeSantis v. Wackenhut Corp., 793 S.W.2d
670, 688 (Tex. 1990).
6. The "Dealer's Inventory Tax" has been a sticky problem since its inception, since motor
vehicle dealers, on which the tax was levied, began passing the tax through to their customers and
calling it a "tax." This Court discussed those actions in Alford Chevrolet-Geo v. Jones, 91 S.W.3d
396, 404 (Tex. App.--Texarkana 2002, pet. denied).
7. In the no-evidence portion of its motion for summary judgment, Dealer listed the elements
of fraud, and first stated without elaboration that there was no evidence of any element of the cause
of action. This statement is inadequate to meet the particularity requirements of a motion for
summary judgment. See Tex. R. Civ. P. 166a(i). Dealer further stated that "plaintiff cannot prove"
a false representation, reliance on the representation, or injury resulting therefrom. This misstates
the requirements of a no-evidence summary judgment. The question is not whether Feagins can
prove his case, the question is whether there is any summary-judgment evidence of specific elements. 
This portion of the motion does, however, provide the specificity required by the rule.
8. Citizens Nat'l Bank v. Allen Rae Invs., 142 S.W.3d 459, 476-77 (Tex. App.--Fort Worth
2004, no pet.); Hoggett v. Brown, 971 S.W.2d 472, 487 (Tex. App.--Houston [14th Dist.] 1997, 
writ denied); Ralston Purina Co. v. McKendrick, 850 S.W.2d 629, 636 (Tex. App.--San Antonio
1993, writ denied).



paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-045-CR%20Burnham%20v.%20State%20Op.%20on%20Reh%27g%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-045-CR%20Burnham%20v.%20State%20Op.%20on%20Reh%27g%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-045-CR%20Burnham%20v.%20State%20Op.%20on%20Reh%27g%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-045-CR%20Burnham%20v.%20State%20Op.%20on%20Reh%27g%20mtd_files/header.htm") f2;
 mso-first-header:url("6-10-045-CR%20Burnham%20v.%20State%20Op.%20on%20Reh%27g%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-045-CR%20Burnham%20v.%20State%20Op.%20on%20Reh%27g%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00045-CR

                                                ______________________________

 

 

                              CALVIN WAYNE BURNHAM,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 123rd
Judicial District Court

                                                             Panola County, Texas

                                                       Trial Court
No. 2005-C-0008

 

                                                   
                                               

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                      MEMORANDUM OPINION

 

            Calvin Wayne
Burnham appeals from his convictions by the trial court on four charges of aggravated
sexual assault of a child and four charges of indecency with a child.  Burnham has filed a single brief, in which he
raises issues common to all of his appeals.[1]  He argues that the trial court committed
reversible error in considering evidence from a previous revocation hearing
when granting the States second amended motion to adjudicate guilt and in
admitting the results of a polygraph examination.  Burnham also complains that the evidence was
insufficient to establish that he violated any conditions of his community
supervision. 

            We addressed
these issues in detail in our opinion of this date on Burnhams appeal in cause
number 06-10-00038-CR.  For the reasons
stated therein, we likewise conclude that reversible error has not been shown
in this case.

            We affirm
the trial courts judgment.

 

 

 

                                                                                    Jack
Carter      

                                                                                    Justice

 

Date Submitted:          December
14, 2010     

Date Decided:             December
15, 2010

 

Do Not Publish

 

 

 

 

OPINION ON REHEARING

 

            In the
above-captioned case, we affirmed Calvin Wayne Burnhams conviction of four
counts of aggravated sexual assault and four counts of indecency with a child,
his stepdaughter.  Burnham has filed a
single motion for rehearing in all of his cases asking that this Court rehear
the matter.[2]  Specifically, he alleges that the State
violated Article 42.12, Section 21(b) of the Texas Code of Criminal Procedure
in amending its motion to adjudicate guilt after the commencement of taking
evidence at the hearing.   Tex.
Code Crim. Proc. Ann. art. 42.12, § 21(b) (Vernon Supp. 2010).  

            We addressed
these issues in detail in our opinion on rehearing of this date on Burnhams
appeal in cause number 06-10-00038-CR. 
For the reasons stated therein, we likewise conclude that Burnhams
complaint on rehearing was not preserved for our review.

            We deny the
motion for rehearing.

 

 

                                                                        Jack
Carter

                                                                        Justice

 

Date:   January 26,
2011                     

 

Do Not Publish

 

 

 











[1]Burnham
appeals from four convictions of aggravated sexual assault of a child and four
convictions of indecency with a child, cause numbers 06-10-00038-CR through 06-10-00045-CR.






[2]Burnham
seeks rehearing of our opinions affirming four convictions of aggravated sexual
assault of a child and four convictions of indecency with a child, cause
numbers 06-10-00038-CR through 06-10-00045-CR.