Adrienne Wolff BREEN, Appellant,

v.

Pat JARVIS, Wendell Reid, the Travelers Insurance Co., Respondent.

No. 53860.

Missouri Court of Appeals, Eastern District, Division Five.

Sept. 27, 1988.

Motion for Transfer to Supreme Court Denied Nov. 9, 1988.

Application to Transfer Denied Jan. 17, 1989.

Andrew F. Puzder, Susan Nell Rowe, Donald J. Gunn Jr., Charles A. Seigel, St. Louis, for appellant.

John A. Michener, Kathi Lynne Chestnut, St. Louis, for respondent.

CARL R. GAERTNER, Judge.

The Circuit Court of St. Louis County dismissed appellant's suit against a Georgia sheriff and his deputy for false return of process because the court lacked long-arm jurisdiction under § 506.500. We hold the defendants lacked minimum contacts in Missouri to satisfy Due Process under the Fourteenth Amendment and affirm.

Appellant, Adrienne Wolff Breen, filed a petition for dissolution of marriage in the Circuit Court of St. Louis County. The court sent the summons and a copy of the petition to the sheriff of DeKalb County, Georgia to serve on appellant's husband who lived in Chamblin, Georgia. The return, signed by the deputy sheriff, showed service:

> by delivering on the 4 day of April 1984 a copy of the summons and a copy of the petition to the within-named respondent Nathaniel Breen [appellant's husband] by leaving on the 4 day of April 1984 for the within-named respondent a copy of the summons and a copy of the petition at the respective dwelling place or usual abode of said respondent with some person of his/her family over the age of fifteen years.

In fact, the deputy never served appellant's husband. The deputy later admitted he served the dissolution petition and summons upon the brother of appellant's husband.

The court granted appellant a default judgment in her dissolution action. Her husband moved to set aside the judgment claiming the court lacked personal jurisdiction. The court agreed and set aside its judgment.

Appellant sued the sheriff and the deputy pursuant to Missouri's "long-arm" statute, § 506.500 RSMo.1986 and Rule 54.06, seeking damages for false return of process. Defendants moved to dismiss and the court sustained their motions because "the acts complained of ... are alleged breech[es] of duty of a public officer and not tortious acts as contemplated by § 506.500...." The court dismissed a cause of action against Travelers Ins. Co., a surety, because it owed no duty to appellant.

■ Missouri courts cannot invoke personal jurisdiction over a defendant domiciled in a foreign state unless the defendant acts within Missouri's long-arm statute, § 506.500 and has minimum contacts within the State to satisfy due process. *State ex rel. Wichita Falls Gen. Hosp. v. Adolf,* 728 S.W.2d 604, 606 (Mo.App.1987). Since the defendants lacked minimum contacts, we do not need to address whether their acts were tortious acts within Missouri's long-arm statute.

■ Due process requires minimum contacts; simply random, fortuitous, or attenuated contacts with the forum state cannot create jurisdiction. *Burger King v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). As stated in *State ex rel. Ranni Assoc., Inc. v. Hartenbach,* 742 S.W.2d 134, 137–38 (Mo.banc 1987).

> "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state. The application of the rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws" *Hanson v. Denckla* 357 U.S. 235, 253 [78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283], (1958). In judging minimum contacts, a court properly focuses on the relationship among the defendant, the forum and the litigation. *Calder v. Jones,* 465 U.S. 783, 788 [104 S.Ct. 1482, 1486, 79 L.Ed.2d 804], (1984).

■ In other words, the contact should be something more than the nonresident's response to an unsolicited request for a service or information, wherein the nonresident receives only a de minimus benefit. *State ex rel. Sperandio v. Clymer,* 581 S.W.2d 377 (Mo.banc 1979); *State ex rel. Bank of Gering v. Schoenlaub,* 540 S.W.2d 31 (Mo.banc 1976).

This court has recently examined the minimum contacts requirement of due process in two cases. In *State ex rel. Wichita Falls Gen. Hosp. v. Adolf,* supra, we found insufficient contacts with Missouri on the part of a Texas hospital which made known to Missouri physicians the availability of a heart for transplant. The hospital permitted Missouri physicians to take a heart from Texas to Missouri for a Missouri resident. Despite the alleged negligence of the Texas hospital in advising the heart to be blood type A when in fact it was type B, and despite the payment to the Texas hospital of at least a part of its expenses, we concluded the hospital's contacts with Missouri were random, fortuitous, and the result of the unilateral activity of the Missouri physicians. 728 S.W.2d at 609. In reaching this conclusion we noted that determination of minimum contacts is subject to less stringent tests in cases involving a product placed into the stream of commerce than in cases based upon a noncommercial rendition of services. *Id.* at 608, citing *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

In *State ex rel. P.A.C.C.S. v. Ryan,* 728 S.W.2d 598 (Mo.App.1987) we held that physicians who rendered medical treatment to a Missouri resident in Kansas for a fee, and forwarded medical records to the patient's Missouri doctors for continued treatment, thereby "causing an effect" in Missouri, had not conducted activities in Missouri and did not have such minimum contacts with this state to make it "reasonable" and "fair" to subject them to the jurisdiction of Missouri courts.

Appellant argues that a sufficient basis for asserting jurisdiction over a nonresident is established if the extra-territorial

conduct of the defendant produces actionable consequences in the forum state. This contention would seem to be predicated upon language found in some opinions in cases involving interstate commercial activities. In rejecting a similar argument in *P.A.C.C.S*, we took note of the two opinions of the Missouri Supreme Court entitled *State ex rel. Sperandio v. Clymer*, 568 S.W.2d 935 (Mo.banc 1978), vacated sub nom. *Pemberton v. Sperandio*, 439 U.S. 812, 99 S.Ct. 69, 58 L.Ed.2d 103 (1978) and *State ex rel. Sperandio v. Clymer*, 581 S.W.2d 377 (Mo.banc 1979). These decisions involve an action filed in Missouri against a Utah physician who had responded by letter to a Missouri doctor's request for advice regarding a contemplated surgical procedure to be performed in Missouri. In the first *Sperandio* decision, the Missouri Supreme Court held that the Utah physician's response to the Missouri doctor's letter was sufficient to subject him to personal jurisdiction in the courts of Missouri because Missouri has an interest in securing redress for its citizens and because the physician's response was intended to accomplish an effect in Missouri. In vacating this decision, the Supreme Court of the United States directed reconsideration in the light of its recent decision of *Kulko v. Superior Court of California*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). *Kulko* involved an issue of personal jurisdiction over a nonresident in a noncommercial setting. The Supreme Court, in addressing the quality and nature of conduct demonstrating the minimum contacts necessary to support personal jurisdiction, directed consideration of three factors in addition to the causation of an effect in the forum state: (1) did the defendant derive any benefit from the contact with the forum state? (2) did the defendant initiate the contacts with the forum state? (3) is there a substantial public policy consideration involved in determining jurisdiction?

Reexamining *Sperandio* in the light of this opinion the Missouri Supreme Court reversed its earlier decision, concluding that in the absence of evidence the Utah physician had initiated the contact with Missouri and because he had not purposefully availed himself of the privilege of conducting business in Missouri, the fact that consequences of his acts occurred in Missouri was insufficient to warrant subjecting him to the jurisdiction of Missouri courts.

 We find the reasoning expressed in these opinions persuasive and the principles ennunciated dispositive of the issue presented herein. Defendants never purposely availed themselves of the privilege of conducting business in Missouri. Their contact with Missouri was initiated by appellant. Defendants merely carried out the duties imposed upon them under § 24–2813, Ga.Code Ann. Their dealings with a Missouri resident were neither solicited, negotiated, nor on-going. Thus, the defendants' contact with Missouri was a fortuitous result of the unilateral action of appellant herself. Defendants derived no significant benefit from the transaction. The $20 fee mandated by § 15–16–21, Ga. Code Ann., is comparable to the reimbursement of expenses found in *Wichita Falls* to be irrelevant toward establishing a commercial activity or purposeful availment of benefit. Finally, we perceive serious public policy considerations in the potential of an adverse impact upon interstate cooperation in the effecting of long-arm service of process. The implications of requiring public officials of one state, who render services to citizens of a sister state, to defend themselves in the latter forum far outweigh the inconvenience of requiring the party who initiated the relationship to seek redress for damages in the courts of the state where the official duties were performed. These public policy considerations are enhanced in view of the general rule, set forth in 12 Am.Jur.2d *Bonds* § 36 (1964), that

the courts of one state will not entertain jurisdiction to enforce official bonds given in another state to secure performance of duties and obligations imposed by the laws of such other state; such bonds relate to the police regulations of the latter state, and it is a general principle that one state will not interfere with the internal police of another and will not enforce an obligation intended to have no operation except in connection with it.

What has been said above demonstrates the propriety of the trial court's dismissal of the action against Travelers Insurance Company, the surety. Furthermore, the copy of the bond filed with the trial court purports to indemnify the sheriff of De-Kalb County for the performance of duties by his detention officers; the deputy sheriff is not listed as one of the sheriff's employees covered by the bond. Additionally, because this bond is a contract entered into in the State of Georgia, we note the application of § 56–1201 Ga.Code Ann., which provides;

> that any action on the bond of a sheriff or other arresting or law enforcement officer or superior court clerk or deputy clerk or clerk or deputy of any court of record, upon which any guarantee or surety company or fidelity insurance company is bound and obligated as surety, shall be instituted in the county of the residence of the officer and not in any other county ...

The judgment of the trial court is affirmed.

SATZ, P.J., and SIMEONE, Senior Judge, concur.