Bowles v. Reed 










[WITHDRAWN 11-22-95]





IN THE
TENTH COURT OF APPEALS
 

No. 10-94-103-CV

        JIM BOWLES, SHERIFF OF DALLAS COUNTY, 
        TEXAS, AND DALLAS COUNTY,

                                                                                       Appellants
        v.

        DIANE REED, TRUSTEE FOR RALPH CRAIG
        BLACK D/B/A ALLIED BONDING AGENCY,

                                                                                       Appellee
 

From the 193rd District Court
Dallas County, Texas
Trial Court # 93-01159-L
                                                                                                    

O P I N I O N
                                                                                                    

          Appellants, Dallas County and Jim Bowles, Sheriff of Dallas County, appeal the trial
court's award of actual and punitive damages in favor of appellee, Diane Reed, trustee. We affirm
in part, reverse and render in part, and reverse and remand in part.
I. Procedural and Factual Background
          Reed, the trustee in bankruptcy for Craig Black d/b/a Allied Bonding Agency, a bail
bondsman, filed suit against Bowles and Dallas County challenging two different bail bond
processing fees levied by the Dallas County Commissioner's Court, and sought four times that
sum as a penalty under former article 3909,


 prejudgment interest, costs of court, and attorneys'
fees. Bowles and Dallas County filed an equitable setoff claim in response. Following a trial
before the bench on stipulated facts, the trial court rendered judgment against both Bowles and
Dallas County. The court denied the defendants their requested setoff relief. Bowles and Dallas
County were found to be jointly and severally liable for $316,387 in actual damages; $23,729.02
in prejudgment interest; court costs; $25,000 in attorneys' fees for trial work; additional
compensation in the event of appeal; and postjudgment interest calculated at 10% per year. 
Bowles was found separately liable for $949,161 in damages, plus $71,187.08 in prejudgment
interest.
          On December 1, 1981, the Commissioner's Court began to charge a fee for every bail bond
processed by the Dallas County Sheriff. The following chart indicates the amount of the fee for
the relevant time periods:
          Order No.                Effective Date          Fee Amount
          81-1865                   12-01-81                  $13 per bond
          82-1227                   09-01-82                  $14 per bond
          83-1301                   10-01-83                  $15 per bond
          85-1508                   10-01-85                  $18 per bond
          86-120                     02-01-86                  $19 per bond
          87-1500                   01-01-88                  $30 per bond
          88-674                     05-02-88                  No fee
          89-960                     06-08-89                  $30 per bond

Bowles also collected a $28 fee for filing an affidavit to go off bail (ATGOB) during the period
of February 15, 1989, to June 17, 1992. The record indicates that, during the relevant time
periods, Bowles collected from Black $471,999 in bond fees and $952 in ATGOB fees.
          The orders for the bond fees were enacted pursuant to former article 3926(a), which
provided that a commissioners court could set reasonable fees to be charged by sheriffs and
constables.


 The ATGOB fees were neither authorized nor approved by the Commissioner's
Court.
          On May 6, 1992, the Texas Supreme Court held that a preconviction bail bond fee levied
by the El Paso County Commissioner's Court (a fee similar to the one imposed by the Dallas
County Commissioners Court) was not authorized by any Texas statute. Camacho v. Samaniego,
831 S.W.2d 804, 815 (Tex. 1992). Specifically, the Court found article 3926a, and its successor
statute section 118.131(a) of the Local Government Code, inapplicable to criminal law matters and
held that no article of the Code of Criminal Procedure provides that a commissioners court may
order the sheriff to collect a fee for the execution of a bail bond. Id. at 814-15.
          In accordance with Camacho, the trial court held the orders from the Dallas County
Commissioner's Court mandating the collection of the bond fees to be unauthorized and assessed
liability for the unlawfully collected fees against both Bowles and Dallas County.
II. Whether Bowles and Dallas County are Immune
          In appellants' first point of error, they assert that both Bowles and Dallas County cannot
be subject to liability because they are entitled to the defense of sovereign immunity. We sustain
the point with regard to Bowles but overrule it with regard to Dallas County.
          At the outset we note that the trial court rendered judgment against Dallas County and
"Defendant Jim Bowles." Thus, the court does not make it clear that Bowles is liable only in his
official, or representative, capacity and not his individual capacity. Such a distinction was not
necessary, however, because Reed sued Bowles solely in his official capacity. By suing Bowles
solely in his official capacity, Reed has, in effect, made her suit solely against the governmental
entity on whose behalf Bowles acted, Dallas County. Liberty Mut. Ins. Co. v. Sharp, 874 S.W.2d
736, 738 (Tex. App—Austin 1994, writ denied); Whitehead v. University of Texas Health Science
Center at San Antonio, 854 S.W.2d 175, 179-80 (Tex. App.—San Antonio 1993, no writ);
Esparza v. Diaz, 802 S.W.2d 772, 778 (Tex. App.—Houston [14th Dist.] 1990, no writ).
          The question before us, then, is whether Bowles is immune from suit in his official
capacity. The doctrine of legislative immunity protects commissioner's courts from liability when
they act in their legislative capacity. Merrill v. Carpenter, 867 S.W.2d 65, 68 (Tex. App.—Fort
Worth 1993, writ denied). Sheriffs share in this legislative immunity when they enforce an order
issued by a commissioner's court in its legislative capacity.


 Id. Moreover, this immunity applies
to the sheriff in both his individual and his official capacities. See id. Here, Bowles was
enforcing an order of the Dallas County Commissioner's Court issued in its legislative capacity. 
Therefore, Bowles shares in that same legislative immunity in his official capacity.
          Reed contends this case differs from Merrill because the trial court here found the bond
fees not only to be unauthorized but also to constitute a taking in violation of the Texas
Constitution. Tex. Const. art. I, § 17. By raising the illegality to the constitutional level, argues
Reed, Bowles cannot be protected by sovereign immunity. Article I, section 17, however, is
inapplicable because the collection of the bond fees is not a taking as provided in that provision. 
Merrill, 867 S.W.2d at 68. Therefore, no constitutional violation occurred.
          Reed also contends article 3909 waives Bowles's sovereign immunity; this argument need
not be addressed because Bowles did not extort anything as provided in article 3909. Vannerson
v. Klevenhagen, No. 01-93-395-CV, slip op. at 6-7 (Tex. App.—Houston [1st Dist.], September
14, 1995, n.w.h.) (on rehearing); Merrill, 867 S.W.2d at 69. Bowles, in collecting the bond fee,
was merely executing a legislative order issued by the Dallas County Commissioner's Court. As
the Sheriff of Dallas County, he was obligated to execute the order. While the bond fee, itself,
may have been illegal, Bowles did not unlawfully demand or receive it. Vannerson, slip op. at
7. Therefore, we need not decide whether article 3909 waived Bowles' sovereign immunity
because Bowles did not violate the provisions of article 3909 in collecting the bond fee.
          Reed argues that state agents are not immune from liability if they act outside the scope of
their authority. See Hale v. Colorado River Mun. Water Dist., 818 S.W.2d 537, 539 (Tex.
App.—Austin 1991, no writ). She contends that, because the collection of these bond fees was
not authorized by law, they constituted an unlawful taking under the constitution and, since Bowles
thereby violated constitutional rights in collecting the fees, he acted outside the scope of his
authority. 
          Bowles, however, was acting within his authority in executing the orders of the
commissioner's court. Merrill, 867 S.W.2d at 68. He bore no duty to examine the
constitutionality or the legality of the statute. See Pierson v. Ray, 386 U.S. 547, 555, 87 S.Ct.
1213, 1218 (1967); Rains v. Crow, 601 S.W.2d 774, 775 (Tex. Civ. App.—Dallas 1980, writ
ref'd n.r.e.) Therefore, Bowles is protected by sovereign immunity because he did not act outside
the scope of his authority.
          Reed further asserts that Bowles is not entitled to official or quasi-judicial immunity
because his actions were ministerial, not discretionary. Reed argues that only when a state agent's
acts involve the exercise of discretion can he be entitled to the sovereign immunity defense. Her
argument regarding official immunity is misplaced because Bowles need not claim official
immunity. The official immunity doctrine applies only when a state agent is sued in his individual
capacity. Bowles was sued only in his official or representative capacity; therefore, any reliance
upon an official immunity argument is inapposite.
          Concerning the quasi-judicial immunity doctrine, Reed similarly argues that Bowles is not
entitled to protection under it because the doctrine only protects discretionary acts while his were
ministerial. See Carpenter v. Barner, 797 S.W.2d 99, 101 (Tex. App.—Waco 1990, writ denied). 
We note, however, that Bowles is immune under the legislative immunity doctrine. Consequently,
we need not address the question of whether Bowles is immune under the quasi-judicial immunity
doctrine.
          Our discussion thus far on Bowles' liability for the collection of the bond fees has centered
exclusively on the bond fees, not the ATGOB fees. The ATGOB fees raise another question. As
stated above, Bowles was legislatively immune in his representative capacity from incurring any
liability as a result of his collection of the bond fees. Merrill, 867 S.W.2d at 68. He obtained this
immunity because the Commissioner's Court, acting in its legislative capacity, ordered him to
collect the fees. Id. The ATGOB fees, however, were collected by Bowles without any
authorization from the Commissioner's Court. Accordingly, Bowles is liable for the ATGOB fees. 
However, as Bowles was sued solely in his representative capacity, he can only be liable in his
representative capacity. Liberty Mut., 874 S.W.2d at 738. Appellants' first point with regard to
Bowles is sustained with regard to the bond, but not the ATBOB, fees.
          Dallas County contends the trial court erred in failing to find it protected from liability
under the doctrine of sovereign immunity. The bail bond fees ordered by the Dallas County
Commissioner's Court have been characterized as a "tax of sorts," and that counties are not
immune from liability for the assessment of an unauthorized tax. Vannerson, slip op. at 8;
Merrill, 867 S.W.2d at 69. The Vannerson and Merrill courts also found that this type of bond
fee is necessarily paid under duress because the "taxpayers" were unable to conduct their bail bond
business without paying the fee. Vannerson, slip op. at 8; Merrill, 867 S.W.2d at 69. We agree
with Vannerson and Merrill that the bond fee was a tax and that it was assessed against Reed under
duress. Therefore, Dallas County is liable, and appellants' first point of error is overruled insofar
as it relates to Dallas County.
III. What, if any, Statute of Limitations Should Apply
          In their fourth point of error, appellants complain the trial court erred in applying a four-year instead of a two-year statute of limitations to Reed's claims. In addition to arguing against
the point, Reed also filed a cross-claim on the issue, alleging no statute of limitations should apply
to the unlawful taking of fees by a governmental entity. We hold that a two-year statute of
limitations should apply.
          Reed contends this point was waived by appellants because they neglected to request any
findings of fact and conclusions of law from the trial court on their defense of limitations. See
August Dev. Co. v. Fish Oil Well Serv., 761 S.W.2d 538, 542 (Tex. App.—Corpus Christi 1988,
no writ). Appellants were not required to request any findings on the issue to preserve it for
appellate review. Appellants raised the limitations issue in an amended answer to the plaintiff's
petition. In the stipulated facts, the amount of funds collected by Bowles from Allied Bonding
Agency was broken down year-by-year. The trial court's judgment reveals that it granted Reed
actual and four-fold damages for the four years preceding Allied Bonding Agency's filing of
bankruptcy on October 1, 1991.


 Appellants again raised the issue in their "Motion For New Trial
and to set Aside Judgment; Alternatively, to Amend, and/or Modify Judgment" filed on January
4, 1994. The motion was denied on January 27, 1994. From these facts, we conclude the point
was preserved by appellants.



          Reed complains in her cross-point that no statute of limitations should apply to her suit
against appellants. She cites two cases in support of her argument, neither of which is applicable. 
She contends that Ratcliff v. City of Hurst, 593 S.W.2d 863 (Tex. App.—Fort Worth 1980, writ
denied), held that "no limitations period applied to [a] taxpayer's suit seeking reimbursement from
municipal ad valorem taxes received by the City of Hurst for periods in which it had no right of
collection." At issue in Ratcliff was the payment of ad valorem taxes to the city of Hurst by
people who lived in an area that the city claimed to have previously annexed. Id. at 864. The
Ratcliff court held that no limitations period should be applied to the plaintiffs in its case because
they at no time possessed standing to contest the annexation of the land upon which they lived. 
Id. Here, Black was able to contest the legality of the bond fees and the ATGOB fees at any time. 
Therefore, Ratcliff is inapposite.
          Reed cites National Biscuit Co. v. State, 135 S.W.2d 687 (Tex. 1940) (hereafter Nabisco),
for the proposition that limitations cannot bar a taxpayer's cause of action when he continued to
pay an illegal tax without requesting a judicial ascertainment of the invalidity of the tax. In
Nabisco, the Texas Supreme Court held that laches did not bar the plaintiff's claim to recover
taxes paid under a statute later found to be unconstitutional when the statutory penalties for failure
to pay the tax were unduly severe. Id. at 693. The Court held that a taxpayer could not contest
a tax he paid voluntarily, although he could contest one paid under duress. Id. Nabisco, in facing
the prospect of litigation, would then have been forced to make a choice between not paying the
tax, which would ensure its standing to sue, or paying the tax and hoping the court would find that
it was paid under duress. Id. The penalties, however, for failing to pay the tax were severe. Id. 
They were:
1. A fine of 25% of such taxes exacted;
 
2. If the amount of such taxes and penalties was not paid in full on or before the next July
1 following default, the corporation forfeited its right to do business in Texas. This
forfeiture was consummated without any judicial action, but simply by the Secretary of
State entering a notation on the proper record to that effect; and
 
3. After the forfeiture entry, the corporation affected thereby was denied the right to do
business in Texas, and was denied the right to sue or defend any action in the courts of
Texas, although with certain exceptions.

Id. at 692. Considering the severity of the penalties, the Court held that Nabisco was not guilty
of laches in continuing to pay the tax for an extended period of time instead of contesting it in the
courts. Id. at 693. No such statutory penalties would have been visited upon Black while he
contested the legality of the bond and ATGOB fees; therefore, Nabisco is also inapposite. Reed's
cross-point is overruled.
          Section 16.003 of the Civil Practice and Remedies Code establishes a two-year limitations
period for the taking, detaining, or converting of another's personal property. Tex. Civ. Prac.
& Rem. Code Ann. § 16.003(a) (Vernon 1986). Reed sued appellants for extorting Black's
personal property, namely, his money, through the bond fees and ATGOB fees. Falls County v.
Mires, 218 S.W.2d 491, 494 Tex. Civ. App.—Waco 1949, writ ref'd) (in construing the
predecessor statute to section 16.003(a), the court held a two-year statute of limitations applicable
to a county treasurer's claim that the county failed to pay him the salary owed him by law);
Arquette v. Hancock, 656 S.W.2d 627, 629 (Tex. App—San Antonio 1983, writ ref'd n.r.e.) (two-year statute of limitations applies to the unlawful collection by a constable of a criminal fine). We
find Reed's extortion claim is a claim for the unlawful conversion of his property and, therefore,
the two-year statute of limitations under section 16.003(a) applies. Appellants' fourth point is
sustained.
IV. Whether Camacho Should Be Applied Retroactively
          In their third point of error appellants allege the Camacho decision should be applied only
prospectively. They refer to a three-part test adopted by the Texas Supreme Court to determine
whether a decision striking down a particular statute should be applied both retroactively and
prospectively or only prospectively. The test provides as follows:
First, the decision to be applied nonretroactively must establish a new principle of law,
either by overruling clear past precedent on which litigants may have relied, or by deciding
an issue of first impression whose resolution was not clearly foreshadowed. 
 
Second, . . . [the court] must . . . weigh the merits and demerits in each case by looking
to the prior history of the rule in question, its purpose and effect, and whether
retrospective operation will further or retard its operation. 
 
Finally, [the court must] weig[h] the inequity imposed by retroactive application, for where
a decision of [the court] could produce substantial inequitable results if applied
retroactively, there is ample basis in our cases for avoiding the injustice or hardship by a
holding of nonretroactivity. 

Carrollton-Farmers Branch Ind. Sch. Dist. v. Edgewood Ind. Sch. Dist., 826 S.W.2d 489, 518
(Tex. 1992) (quoting Chevron Oil Co. v. Huson, 404 U.S. 97, 106-07, 92 S.Ct. 349, 355 (1971)).
          Notwithstanding the three factors listed in Carrollton-Farmers Branch, we hold that the
Camacho decision should be applied retroactively because the Texas Supreme Court applied it
retroactively to the parties in that case. The United States Supreme Court has held that when it
decides a case and applies the new legal rule of that case to the parties before it, then it and other
courts must treat that same new rule as retroactive, that is, applying it to all pending cases,
whether or not those cases involve predecision events. Reynoldsville Casket Co. v. Hyde, — U.S.
—, 115 S.Ct. 1745, 1748 (1995) (citing Harper v. Virginia Dept. of Taxation, 509 U.S. —, —,
113 S.Ct. 2510, 2517 (1993)); James B. Bean Distilling Co. v. Georgia, 501 U.S. 529, 540, 111
S.Ct. 2439, 2446 (1991) (plurality opinion).
          The Texas Supreme Court, while not specifically adopting the rule of law stated in Harper,
has recently reached the same conclusion. In Ellis County State Bank v. Keever, 888 S.W.2d 790
(Tex. 1994), the Court was faced with the question of whether its decision in Transportation Ins.
Co. v. Moriel, 879 S.W.2d 10 (Tex. 1994), should be applied retroactively. The Court held that
it should be applied retroactively to all pending cases in which a party had preserved a complaint
that the court of appeals failed to properly scrutinize a punitive damages award. Keever, 888
S.W.2d at 798. The reasoning used by Keever court is the same reasoning used by the United
States Supreme Court in Hyde and James B. Bean Distilling; i.e., when an appellate court creates
a new rule of law in a case and applies it retroactively to the parties in that case, then that same
rule of law should be applied retroactively to all other parties similarly situated. See Bowen v.
Aetna Cas. and Sur. Co., 837 S.W.2d 99, 100 (Tex. 1992) (per curiam) (decisions of the Texas
Supreme Court operate retroactively unless the court expressly exercises its discretion to make the
judgment prospective only).
          In Camacho the Texas Supreme Court fashioned a "new" rule of law that a bond fee
ordered by the El Paso County Commissioner's court was without statutory authorization and then
held that El Paso County was liable retroactively to the parties in the case from whom it had
received the fee in the past. Camacho, 831 S.W.2d at 815 (judgment rendered in favor of the
plaintiff bailbondsmen). Therefore, following the same reasoning in Keever and Hyde, we
conclude the holding in Camacho should be applied retroactively to all parties similarly situated
to those in Camacho.



V. Whether the Trial Court Erred in Failing to Consider Appellants' Pass-On Defense
          In their second point of error, appellants argue the trial court erred in failing to find them
entitled to their "pass-on" defense. In a pass-on defense, a defendant in a tort action alleges the
plaintiff suffered no monetary damages because he simply passed-on any charges assessed against
him to some other party. See Illinois Brick Co. v. Illinois, 431 U.S. 720, 724-25, 97 S.Ct. 2061,
2064 (1977); Abbott Lab., Inc. v. Segura, 38 Tex. Sup. Ct. J. 961, 963-64 (June 29, 1995).
          In response, Reed contends appellants waived their second point of error by failing to
affirmatively plead their pass-on defense. She cites Swofford v. Tri-State Chemicals, Inc., 764
S.W.2d 24 (Tex. App.—El Paso 1989, writ denied), for the proposition that an affirmative defense
must be plead in the defendant's answer to be able to argue the defense on appeal. Swofford,
however, stands for nothing of the sort. Swofford, citing Rule 52(a) of the Rules of Appellate
Procedure, simply holds that arguments may not be made for the first time on appeal. Here,
appellants, although not raising the pass-on defense in either its original answer or its amended
answer, did raise it to the trial court in a trial brief.
          Affirmative defenses may be tried by consent even if not properly pleaded. Rodeheaver
v. Steigerwald, 807 S.W.2d 790, 792 (Tex. App.—Houston [14th Dist.] 1991, writ denied), cert.
denied, 502 U.S. 1093, 112 S.Ct. 1167 (1992). When the defense at issue is not properly pleaded
but is brought before the trial court by the active assistance of both parties, it will be considered
to have been properly raised to the trial court. Id. Here, the pass-on defense was raised in
appellants' trial brief. Moreover, facts bearing upon the pass-on defense were asserted in the
stipulations filed in the trial court. The relevant portion of the stipulations reads as follows:
The parties agree that the amount of Bail Bond Approval Fees and Affidavits To Go Off
Bail fees that Ralph C. Black, d/b/a Allied Bonding Agency was required to pay to Dallas
County as part of his business of issuing bail bonds to criminal defendants were taken into
account by Mr. Black in setting the rates he charged his clients for his services. However,
parties are not in agreement as to the relevancy of this fact or the impact which such fact
has on the issues in this case. Therefore, the parties have agreed to state their respective
positions as follows:
 
1. It is the Plaintiff's position that the fact that Mr. Black was either paid in
advance or reimbursed by any of the persons for whom he posted bail bond
approval fees that were required of him, and collected from him by Sheriff Bowles
and received by Dallas County, has absolutely no bearing on the Defendant's
liability to refund any legal fees which were charged to Mr. Black due to the fact
that he had to pay the fees himself and that payment of such fees were necessary
in order for Mr. Black to operate as a bail bondsman in Dallas County.
 
2. It is the Defendants' contention that the fact that Ralph Black d/b/a Allied
Bonding Agency was either paid in advance or was reimbursed by any persons for
whom he posted Bail Bond Approval Fees that were required of him, and collected
. . . by Sheriff Bowles, and received by Dallas County, shows that Mr. Black has
been fully paid and/or reimbursed for all monies which he posted as bail approval
fees and thus sustained no economic losses as a result of posting those fees.

Considering the stipulations and the fact that the defense was raised in appellants' trial brief, we
hold the defense was tried by consent.
          Appellants contend the trial court erred in failing to consider the pass-on defense. No
findings of fact and conclusions of law were filed by the trial court to indicate either that it rejected
the pass-on defense as a viable theory in Texas or that it accepted the theory but found the facts
insufficient to support the defense. From the judgment, we know that the trial court did not
consider the defense meritorious because it in no way affected the amount of the damages. We
will presume the trial court accepted the pass-on defense as a viable theory but then, sitting as the
trier of fact, failed to find that appellants had produced sufficient evidence to establish its
applicability. See Burnett v. Motyka, 610 S.W.2d 735, 736 (Tex. 1980) (per curiam) ("In a
nonjury trial, where no findings of fact or conclusions of law are filed or requested, it will be
implied that the trial court made all the necessary findings to support its judgment.") We will,
therefore, examine the trial court's ruling to determine whether appellants proved their defense
at trial as a matter of law. See Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989).
          A party attempting to overcome an adverse fact finding in which he has the burden of proof
as a matter of law must, first, examine the record for evidence that supports the fact finder's
findings while ignoring all evidence to the contrary, and, second, if there is no evidence to support
the fact finder's answer, then, the entire record must be examined to see if the contrary position
is established as a matter of law. Id.
          Under the pass-on defense, appellants bore the burden of establishing which portion of the
illegally assessed fee was passed on to Black's customers. See Abbott Lab., 38 Tex. Sup. Ct. J.
at 964 n.4. The above-quoted stipulation of facts reveals that appellants did not attempt to
apportion the amount of funds Black allegedly passed on to his clients. Instead, they attempted
to demonstrate that Black passed on to his clients the entire amount of the bond fees. In other
words, they put the issue before the trier of fact on an all-or-nothing basis.
          There is evidence in the stipulated facts to demonstrate that Black did not pass-on the entire
amount of the bond fees to his clients. The stipulated facts indicate that Black "took into account"
the bond fees in setting his rates. The trier of fact could reasonably have concluded from this fact
that Black passed on some amount of the bond fees but not the entire amount. Because there is
some evidence from which the trier of fact could reasonably have made this deduction, the record
fails to conclusively establish that appellants proved the pass-on defense as a matter of law. See
Sterner, 767 S.W.2d at 691. Appellants' second point is overruled. 
VI. Whether Laches Should Bar Relief
          In their fifth point of error appellants complain laches should apply to bar Reed from
obtaining relief because she waited ten years to bring her cause of action. Appellants have cited
no authority in support of their argument.
          Rule 74(f) of the Rules of Appellate Procedure provides that briefs submitted to the courts
of appeals "shall include . . . such discussion of the facts and the authorities relied upon as may
be requisite to maintain the point at issue." Tex. R. App. P. 74(f). Rule 74(f) has consistently
been found to mean that an appellant presents the court of appeals with nothing to review when
he fails to cite any authority for his argument or arguments in his points of error. Hunter v. NCNB
Texas Nat'l Bank, 857 S.W.2d 722, 725 (Tex. App.—Houston [14th Dist] 1993, writ denied);
Malouf v. Dallas Athletic Country Club, 837 S.W.2d 674, 678 (Tex. App.—Dallas 1992, writ
dism'd w.o.j.); Essex Crane Rental Corp. v. Striland Constr. Co., Inc., 753 S.W.2d 751, 756
(Tex. App.—Dallas 1988, writ denied).
          Rule 83 of the Texas Rules of Appellate Procedure provides that "[a] judgment shall not
be affirmed . . . or an appeal dismissed for defects or irregularities, in appellate procedure, either
of form or substance, without allowing a reasonable time to correct or amend such defects or
irregularities[.]" Tex. R. App. P. 83.
          The First Court of Appeals, however, has held the provisions of Rule 83 do not apply in
appeals where the appellant sufficiently pleads some of his points of error but insufficiently pleads
others. Henry S. Miller Management Corp v. Houston State Associates, 792 S.W.2d 128, 133-135
(Tex. App.—Houston [1st Dist.] 1990, writ denied) (on rehearing). The court reached this
conclusion by reasoning that the purpose behind Rule 83 is to ensure that an appellant's brief is
not dismissed by the court of appeals solely for defective pleading. Id. at 134-35. However,
when an appellant adequately pleads some of his points of error but not all, the appellate court,
in declining to permit the appellant an opportunity to amend his defective points of error, will not
be then dismissing the whole of the appellant's brief for defective pleading. Id.
          Appellants sufficiently pleaded all of his points of error other than the fifth by citing
authorities in support of their arguments.


 Therefore, appellants have presented us nothing to
review under their fifth point of error. The point is overruled.
VII. Whether Reed Was Entitled to Attorney's Fees
          Appellants argue in their sixth point of error that the trial court erred in awarding Reed
attorney's fees. They assert there is no statutory provision which authorizes the assessment of
attorney's fees against them as governmental entities. We disagree.
          In their brief appellants argue that Reed is not entitled to attorney's fees under either
section 37.009 or section 38.001 of the Civil Practice and Remedies Code. Tex. Civ. Prac. &
Rem. Code Ann. §§ 37.009, 38.001 (Vernon 1986). Section 37.009 provides for the awarding
of attorney's fees to the plaintiff if he is successful in his declaratory judgment action. Section
38.001 is the general statute establishing the circumstances under which a party is eligible to
receive attorney's fees in other types of cases.
          In Reed's petition, she specifically raised two separate causes of action. The first one she
labeled, simply enough, "First Cause of Action," and the second one she labeled, "Second Cause
of Action - Declaratory Judgment." Under both causes of action, however, Reed was asking the
trial court to construe the orders of the Dallas County Commissioner's Court directing the sheriff
to collect the bond fees to determine whether such orders were authorized by statute.
          When a cause of action is brought under two different theories, and attorney's fees can be
awarded under only one of them, the trial court should segregate the amount of time the attorney
spent working on the two different theories to determine the proper amount of attorney's fees. 
Hruska v. First State Bank of Deanville, 747 S.W.2d 783, 785 (Tex. 1988); First Nat'l Bank of
Commerce v. Anderson Ford-Lincoln-Mercury, Inc., 704 S.W.2d 83, 85 (Tex. App.—Dallas 1985,
writ ref'd n.r.e.) (on rehearing). Here, Reed brought her cause of action both in tort and in a
declaratory judgment suit. The trial court ordered $25,000 in attorney's fees, plus $5,000 more
on an appeal to the intermediate court of appeals, $5,000 to file a writ of error with the Supreme
Court, and $5,000 more if the writ is granted. These figures were taken from the stipulated facts. 
The trial court did not segregate the amount of attorney's fees between the tort suit and the
declaratory judgment suit. Appellants, however, did not object to this. The failure to so object
waived any error the trial court may have made in ordering attorney's fees for the tort suit. Tex.
R. App. P. 52(a); Hruska, 747 S.W.2d at 785.
          The Texas Supreme Court has recently held that attorney's fees may be assessed against
governmental entities in cases brought under the Declaratory Judgments Act. Texas Educ. Agency
v. Leeper, 893 S.W.2d 432, 445-46 (Tex. 1994). Under the facts here, because Reed under both
causes of action was requesting declaratory relief, we find that both causes of action were brought
under the Declaratory Judgments Act. Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011
(Vernon 1986 & Vernon Supp. 1995); Franklin v. Kyle, 899 S.W.2d 405, 406 (Tex. App.—Waco
1995, no writ); Canales v. Zapatero, 773 S.W.2d 659, 661 (Tex. App—San Antonio 1989, writ
denied) (per curiam) (on rehearing). Therefore, we conclude the trial court did not err in
assessing attorney's fees against appellants. Their sixth point of error is overruled.
VIII. Whether Reed Was Entitled to Prejudgment Interest on the Punitive Damages
Portion of the Judgment
          Appellants in their seventh point of error argue the trial court erred in ordering
prejudgment interest on the damages awarded to Reed. The judgment awarded $23,729.02 in
prejudgment interest on the actual damages against both Dallas County and Bowles, jointly and
severally.


 The judgment also reveals that the trial court assessed against Bowles prejudgment
interest in the amount of $71,187.08 on the four-fold damages awarded under article 3909.
          The rule in Texas has historically been that prejudgment interest is not allowable on
punitive damages. Vail v. Texas Farm Bureau Mut. Ins. Co., 754 S.W.2d 129, 137 (Tex. 1988);
Cavnar v. Quality Control Parking, Inc., 696 S.W.2d 549, 555-56 (1985); Gifford Hill American,
Inc. v. Whittington, 899 S.W.2d 760, 765 (Tex. App.—Amarillo 1995, n.w.h.). The general rule
was reinforced in 1987 by section 41.006 of the Civil Practice and Remedies Code, which
prohibited the assessment of prejudgment interest on personal injury, property damage, breach of
warranty and wrongful death actions grounded in negligence or strict liability. Tex. Civ. Prac.
& Rem. Code Ann. §§ 33.001, 41.002(a), 41.006 (Vernon 1986 & Supp. 1995); C & H
Nationwide, Inc. v. Thompson, 903 S.W.2d 315, 325 (Tex. 1994); Keever, 888 S.W.2d at 797.
          At the same time the legislature enacted section 41.006, it also adopted article 5069-1.05,
section 6(a), which provides:
Judgments in wrongful death, personal injury, and property damage cases must include
prejudgment interest. Except as provided by Subsections (b), (c), and (d) of this section,
prejudgment interest accrues on the amount of the judgment during the period beginning
on the 180th day after the date the defendant receives written notice of a claim or on the
day the suit is filed, whichever occurs first, and ending on the day preceding the date
judgment is rendered.

Tex. Rev. Civ. Stat. Ann. art. 5069-1.05, § 6(a) (Vernon Supp. 1995). Section 6(a) has ushered
confusion into the area of prejudgment interest on punitive damages. By commanding that
prejudgment interest be awarded on "judgments" in wrongful death, personal injury, and property
damages cases, the legislature suggested that prejudgment interest should also be awarded on the
punitive damage portion of the judgment because such damages are, indeed, part of the judgment. 
See Keever, 888 S.W.2d at 796. 
          The Supreme Court, however, has held that when a cause of action falls under the
prohibition against prejudgment interest under section 41.006, then section 41.006 controls over
anything suggesting the contrary in section 6(a). Id. at 797. In Keever, the Court examined
section 41.006 and its related provisions to determine whether they precluded the assessment of
prejudgment interest on punitive damages in a claim for malicious prosecution. In part of its
reasoning, the Court concluded that section 41.006 applied to intentional torts and, therefore, the
awarding of prejudgment interest on the plaintiff's punitive damages was improper. Id. at 798. 
We, in accordance with Keever, conclude that the awarding of prejudgment interest on Reed's
claim on the intentional tort of extortion under article 3909 was also improper. Id.; but see Crum
& Forster, Inc. v. Monsanto Co., 887 S.W.2d 103, 154 (Tex. App.—Texarkana 1994, writ dism'd
by agr.) (trebling of punitive damages provisions under DTPA and article 21.21 of the Insurance
Code is permissible because neither cause of action falls under section 41.006).


 Appellants'
seventh point is overruled.
IX. Whether Appellants Were Entitled to a Set-Off
          In their eighth and final point of error appellants argue the trial court erred in failing to set-off against the judgment $1,640,491 in non-contingent bail bond forfeiture judgments that Black
owes to appellants. Appellants, however, also state in their argument that they raise the point
solely to preserve the error should it be brought before the United States Bankruptcy Court. They
do not request any particular relief from this court. We cannot grant any relief that is not
specifically requested of this court. Tex. R. App. P. 74(g). Therefore, appellants' eighth point
is overruled.
X. Conclusion
          To the extent the trial court found Bowles liable for the bond fees, we reverse and render
a take-nothing judgment in his favor.
          Concerning the judgment of attorneys' fees against Dallas County, we affirm.
          Concerning Bowles' liability for the ATGOB fees, we reverse and remand for a new
determination of the amount of his liability for actual damages, punitive damages, and prejudgment
interest consistent with this opinion. The trial court shall enter judgment once it has made this
calculation.
          Concerning Dallas County's liability for the bond fees, we reverse and remand for a new
determination of the amount of its liability for actual damages, punitive damages, and prejudgment
interest consistent with this opinion. The trial court shall enter judgment once it has made this
calculation.
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed in part; reversed and rendered in part; 
          and reversed and remanded in part
Opinion delivered and filed October 31, 1995
Publish
[WITHDRAWN BY ORDER 11-22-95]